# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## CLASS ACTION LAWSUIT AND JURY DEMAND

Carol Lucas, R.N.; Tara Vialpando, R.N.;
and Kelly Ann Schultz, P.A.,

                                Plaintiffs,

vs.                                             Case No. 2015-       -

Ulliance, Inc. (Official and Individual Capacity);
Bureau of Healthcare Services; Carole H. Engle, Director of BHCS
(Official and Individual Capacity);
Carolyn Batchelor, Contract Administrator,
Health Professional Recovery Committee
(Official and Individual Capacity);
Stephen Batchelor, Contract Administrator;
Health Professional Recovery Committee;
Susan Bushong, Contract Administrator,
Health Professional Recovery Program; and
Nikki Jones, LMSW (Official and Individual Capacity).

                                Defendant.

---

CHAPMAN LAW GROUP
Ronald W. Chapman (P37603)
Ronald W. Chapman, II (P73179)
Attorney for Plaintiff
40950 Woodward Ave., Ste. 120
Bloomfield Hills, MI  48304
(248) 644-6326
rchapman@chapmanlawgroup.com
rwchapman@chapmanlawgroup.com

---

There is no other pending or resolved civil action
within the jurisdiction arising out of the transaction or
occurrence alleged in the Complaint.

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

NOW COME, **Carol Lucas, R.N.**; **Tara Vialpando, R.N.;** and **Kelly Ann Schultz, R.N.**, for themselves and on behalf of all others similarly situated, by and through their attorneys, **Ronald W. Chapman, Ronald W. Chapman II**, and **Chapman Law Group**, and state in support of their Class Action Complaint and Jury Demand against Defendants, **Ulliance, Inc. (Official and Individual Capacity); Bureau of Healthcare Services; Carole H. Engle, Director of BHCS (Official and Individual Capacity); Carolyn Batchelor, Contract Administrator, Health Professional Recovery Program (Official and Individual Capacity); Stephen Batchelor, Contract Administrator, Health Professional Recovery Program; Susan Bushong, Contract Administrator, Health Professional Recovery Program;** and **Nikki Jones, LMSW (Official and Individual Capacity)** as follows:

### Background

The Health Professional Recovery Program (HPRP) was established by the Michigan Legislature in 1993 (Public Act 80 of 1993) in order to meet the needs of the health professionals for a confidential, non-disciplinary approach to support recovery from substance use or mental health disorders.  The program was designed to encourage impaired health professionals to seek a recovery program before their

impairment harms a patient or damages their careers through disciplinary action. Unfortunately, a once well-meaning program, HPRP, has turned into a highly punitive and involuntary program where health professionals are forced into extensive and unnecessary substance abuse/dependence treatment under the threat of the arbitrary application of pre-hearing deprivation by the Bureau of Healthcare Services.

HPRP is administered by a private contractor, Ulliance, Inc., under the direction of the Health Professional Recovery Committee (a multi-disciplinary committee) designed to oversee the implementation of the contract. HPRP was originally designed to simply monitor the treatment of health professionals recommended by providers; however, recently, HPRP has unilaterally expanded its role to include making treatment decisions. Licensed Health Professionals can be referred to HPRP by their employers, the State of Michigan, fellow healthcare workers, and they can self-report for voluntary treatment. Once a report is provided to HPRP by either a self-report, an anonymous source, employer, or the BHCS, a very rigid intake process ensues. This contract culminates in the licensee being offered a treatment contract if they qualify for admission. While HPRP's contract requires that treatment be selected by an approved provider and that it be tailored in scope and length to meet the individual licensee's needs, HPRP's contracts only vary in their length, either two (2) or three (3) years, and contain the same requirements for every

licensee:  random drug screens, three (3) group meetings a week, three (3) narcotics anonymous meetings or alcoholics anonymous appointments, monthly individual therapist appointments, quarterly addictions appointments, monthly self-reports, restrictions on prescription substances, advanced approval of employment, worksite monitoring, restrictions on weekly hours worked, and quarterly NA or AA sponsor reports.  Further, treatment providers are not permitted to recommend the specific treatment rendered and, on information and belief, HPRP has a policy that only HPRP can set the terms of the treatment required in the contract.

Failure to "voluntarily" submit to HPRP treatment results in automatic summary suspension by the Bureau of Healthcare Services without a pre-deprivation hearing.  Facing the threat of summary suspension in the event of non-compliance, licensed health professionals are induced into a contract and are often required to refrain from working without prior approval, refrain from taking prescription drugs prescribed by treating physicians, and sign broad waivers allowing HPRP to disclose their private health information to employers, the State of Michigan, and/or treating physicians.  Also, failure to sign an HPRP contract within 45 days of first contact results in automatic case closure, even if a licensee is requesting appeal of a decision to be included in an HPRP contract.  Case closure always results in summary suspension of the licensee's license by the BHCS.

Once a licensee is summarily suspended, HPRP uses the broad releases that licensees are required to sign and submits their entire HPRP file to the BHCS so that an Administrative Complaint can be issued using the licensee's private health data, psychotherapy notes, and treatment records generated from "voluntary" substance abuse treatment as evidence.  Every licensee in the State of Michigan who has received a summary suspension, as a result of HPRP non-compliance, has had their private health data transmitted to the BHCS for use during Administrative Proceedings.

In short, the mandatory requirements of HPRP, coupled with the threat of summary suspension, make involvement in HPRP an involuntary program circumventing the due process rights of licensees referred to the program.  The involuntary nature of HPRP policies and procedures as outlined above and the unanimous application of suspension procedures upon HPRP case closure are clear violations of Procedural Due Process under the Fourteenth Amendment.

Plaintiff's, Carol Lucas, R.N.; Tara Vialpando, R.N.; and Kelly Ann Schultz, P.A., are three (3) such examples of the hundreds, and potentially thousands, of licensed health professionals injured by the arbitrary application of summary suspension procedures by the Bureau of Healthcare Services and HPRP.  Each named Plaintiff suffered arbitrary license suspension by the Bureau of Healthcare services as a result of their desire to not enter the voluntary treatment offered by

HPRP.  In each case, the unconstitutional Bureau of Healthcare Services policy requiring that each licensee who does not comply with HRPP shall have their license suspended was arbitrarily applied.  In each case, the suspension was promptly overturned by an administrative law judge after the opportunity for a hearing.  In each case, the State did not produce information that a board member or its designee reviewed the case and independently exercised judgment that summary suspension proceedings should ensue.

## NATURE OF THE ACTION

1.  Plaintiffs bring this action as a Class Action pursuant to Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who are, or were participants in the Health Professionals Recovery Program during the period from January 1, 2011 to present.

2.  This action is necessary to protect the property rights of Plaintiffs and all others similarly situated which have been and will continue to be damaged due to the arbitrary application of summary suspension procedures by the Bureau of Healthcare Services and HPRP, and other statutory and constitutional violations more fully detailed below.

## STATEMENT OF JURISDICTION

3.  This action arises under the United States Constitution and under the laws of the United States Constitution, particularly under the provision of the

Fifth and Fourteenth Amendments of the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, §1983, §1985 and §1986.

4. This Court has jurisdiction under the provisions of Title 28 of the United States Code, sections 1331 and 1343 and pendant jurisdiction over state claims which arise out of the nucleus of operative facts common to Plaintiffs' federal claims.

5. Plaintiffs bring suit against each and every Defendant in their individual and official capacities.

6. Each and all of the acts of Defendants set forth-Ulliance, Inc., a domestic profit corporation; Carolyn Batchelor; Stephen Batchelor; Carole Engle; Susan Bushong; and Nikki Jones-were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the State of Michigan, and by virtue of and under the authority of the Defendants' employment with the State of Michigan and MCL 333.16168 and 333.16167.

**<u>PARTIES</u>**

7. Plaintiffs, Carol Lucas, R.N., Tara Vialpando, R.N., and Kelly Ann Schultz, P.A., are residents of Michigan and are registered health professionals in the State of Michigan.

8. Carol Lucas, R.N., is a registered nurse in the State of Michigan and received a license suspension for failure to comply with HPRP despite the fact that two (2) HPRP evaluators determined that she did not require treatment. HPRP, supplanting their decision for the decision of qualified HPRP evaluators, determined that she required treatment, offered her a contract which she rejected. BHCS and Carol Engle, issued a Summary Suspension for failure to comply with HPRP's request despite the fact that two (2) "HPRP approved providers" determined that no treatment was necessary and that she did not require an HPRP contract.

9. Tara Vialpando, R.N., is a nurse licensed in the State of Michigan who received a Summary Suspension after being told by an HPRP evaluator, prior to being offered an HPRP contract, that she must refrain from taking pain medication prescribed by physicians who treated her for years. The evaluator made this statement after a short evaluation without consulting her treating physicians for approval. Ms. Vialpando refused the request of provider and received a Summary Suspension for failure to "voluntarily" submit to treatment which would subject her to severe pain against the advice of her treating physicians. Ms. Vialpando's summary suspension was dissolved after a hearing.

10. Kelly Anne Schultz, P.A., is a physician's assistant licensed to practice in the State of Michigan. Ms. Schultz was referred to HPRP after reporting a DUI she received to the state. The State of Michigan declined to take disciplinary action against Ms. Schultz but did send her information to HPRP. HPRP attempted to contact Ms. Schultz by sending a letter to her old address which did not arrive at her new address for approximately fifteen (15) days[1]. Ms. Schultz called HPRP when she received the letter but was informed that HPRP "closed" her case as non-compliant under a policy that requires HPRP cases to be closed if no contact is made with the licensee - HPRP refused to re-open her case upon Ms. Schultz' request. Without a diagnosis or any information identifying that Ms. Schultz was somehow a danger to the public health, safety, or welfare, Carole Engle and BHCS issued a Summary Suspension suspending Ms. Schultz's license to practice as a physician's assistant as a result of the suspension.

11. As a result of Defendants' wonton, willful, and reckless conduct, the above named Plaintiffs suffered damages, including but not limited to, loss of income, professional embarrassment, economic damages including attorney's fees, and loss of future earning capacity.

---

[1] Ms. Schultz testified at a hearing that she properly updated her address with the State within thirty (30) days of her address change as required by the Public Health Code.

12. Defendant, Ulliance, Inc. d/b/a HPRP, is a Michigan domestic profit corporation with its registered agent located at 901 Wilshire Dr. Suite 210 Troy, Michigan 48099 and was at times employing one or more Defendants, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones.

13. Defendant, Ulliance, Inc., is currently contracted with the State of Michigan to administer the contract for HPRP.  HPRP operates as a separate section of Ulliance's overall operations; Ulliance also contracts with employers to provide human resources assistance and specifically assistance related to monitoring and treatment of substance abuse issues.

14. Defendant, Carole H. Engle, is the Director of the Bureau of Healthcare Services and, on information and belief, is a resident of Michigan and an attorney licensed in the State of Michigan.

15. Defendant, Carolyn Batchelor, is an employee of Ulliance, Inc. and the contract administrator for the HPRP contract and, on information and belief, is a resident of Michigan.

16. Defendant, Stephen Batchelor, is an employee of Ulliance, Inc. and the contract administrator for the HPRP contract and, on information and belief, is a resident of Michigan.

17. Defendant, Nikki Jones, LMSW, is a licensed social worker in the State of Michigan and is an employee of Ulliance, Inc. and, on information and belief, is a resident of Michigan.

18. Susan Bushong is an employee of the State of Michigan, Department of Licensing and Regulatory Affairs, Bureau of Healthcare Services and is charged with overseeing the execution of the HPRP contract with Ulliance, Inc.

## CLASS ACTION ALLEGATIONS

19. Plaintiffs bring this action as a Class Action pursuant to Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who are, or were participants in the Health Professionals Recovery Program during the period from January 1, 2011 to present.

20. The Class consists of thousands of persons located throughout the United States, thus, joinder of all Class Members is impracticable.  For example, between March 2013 and September 2013 HPRP had approximately eight hundred and eight (808) new participants of which only thirty six (36) were assessed as not eligible for the program. During that same time period, one-hundred and ninety two (192) participants had their case closed as non-compliant. The exact number of Class Members is not presently known to

Plaintiffs, but can readily be determined by appropriate discovery and access to HPRP quarterly and monthly reports.

21. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in 42 U.S.C. §1983 litigation and in professional licensing.  Plaintiffs' counsel is uniquely qualified to handle the complexities of 42 U.S.C. §1983 litigation as well as the administrative law issues arising out of the cause of action.  Chapman Law Group currently represents or has represented a significant number of potential Class Members.

22. Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

23. Each Class Member was injured in that, among other things, pre-deprivation review was not completed as a result of the arbitrary application of a policy, custom or practice that every licensee who does not elect to enter HPRP will be summarily suspended.  Class Members were deprived of a constitutionally protected right to due process.  Because of the commonality of the injuries and the readily identifiable nature of the Class, as well as the common grievances of the Class, a Class Action is superior to other available methods for the fair and efficient adjudication of this controversy.

24. Because the damages suffered by some of the individual Class Members may be relatively small when compared to the expense of Federal Civil Rights litigation, the expense and burden of individual litigation make it virtually impossible for the Class Members to individually seek redress for the wrongful conduct alleged herein.

25. The Class contains possibly thousands of similarly situated individuals. Suit by each potential member of the Class would unnecessarily burden the Court and individually prejudice Class Members and Defendants themselves.  Class certification is the superior device for adjudication for all parties involved.

26. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class because the issues are solely related to HPRP and BHCS general policies, customs, and practices; not the individual application of that policy, custom, or practice.

27. Pursuant to Rule 23(b)(2), through their unconstitutional policies and procedures, the Defendants have refused to act on grounds that apply generally to the class and the Class seeks injunctive or declaratory relief as well as monetary relief. Final injunctive relief is appropriate respecting the class as a whole.

28. Among the questions of law and fact common to the Class are:

a.  Did the BHCS's arbitrary application of summary suspension procedures, without a pre-deprivation hearing or other safeguards, after HPRP's **arbitrary determination** of non-compliance amount to a procedural due process violation in violation of 42 U.S.C. § 1983 against a sub-class of individuals who received a Summary Suspension as a result of HPRP non-compliance?

b.  Did the BHCS's arbitrary application of summary suspension procedures and HPRP's use of threats, intimidation and coercion to force licensed health professionals into HPRP amount to a conspiracy for the purpose of depriving, either directly or indirectly, the named Plaintiffs and other similarly situated individuals, namely health professionals governed by the Public Health Code, the equal protection of the laws and the equal privileges and immunities under the laws such as inter alia, the ability to choose whether or not to receive medical treatment and the healthcare provider of their choice?

c.  Did the actions and policies of HPRP, ratified by BHCS, amount to involuntary treatment decisions which were and are contrary to the empowering statute and therefore in violation of the Fourteenth Amendment?  HPRP is only authorized to monitor treatment programs,

not create and enforce them with their own stable of providers who are controlled by HPRP and BHCS;

d. Did Defendants, who had knowledge of BHCS's denial of due process and the conspiracy between BHCS and HPRP, have the ability to prevent said conspiracy and fail to prevent it?

e. Did Defendants, Ulliance and its employees, breach specific terms of the State Contract with HPRP which applied to all Class Members such as the requirement that HPRP not perform treatment or make treatment decisions, the requirement that case workers have a maximum of eighty (80) cases, the requirement that each licensee be afforded an opportunity to view a list of all HPRP treatment providers, failure to specifically tailor monitoring agreements, etc.

29. Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

## CLASS ACTION ALLEGATIONS

## COUNT I
## 42 USC 1983 CONSTITUTIONAL DEPRIVATIONS BY BHCS, ULLIANCE, INC., CAROLE ENGLE, CAROLYN BATCHELOR, LMSW, STEPHEN BATCHELOR,  SUSAN BUSHONG, AND NIKKI JONES, LMSW

30. Plaintiffs hereby re-allege each and every allegation of this Complaint as if fully stated herein.

31. At all times relevant, pursuant to the Fifth and Fourteenth Amendments of the United States Constitution, Plaintiffs, Carol Lucas, R.N.; Tara Vialpando, R.N.; Kelli Schultz, P.A., and Class Members, had a right to procedural due process prior to deprivation of their rights, suspension of their license by HPRP and BHCS. *Matthews v Eldridge*, 424 U.S. 319 (1976).

32. At all times, each Defendant was operating under color of state law, namely MCL 333.16168, MCL 333.16233 and 333.16167 which authorizes BHCS to contract with a company to administer the HPRP contract. At all times, each Defendant was either an employee of the State of Michigan or employed by HPRP, and therefore an agent of the State of Michigan operating under the statute that authorizes HPRP.

33. The actions and omissions of acts and policies created by Defendants were violations of clearly established statutory and constitutional rights to a due process proceeding or review of the circumstances of their case by "the chair of the appropriate board or task force or his or her designee" to determine if "the public health, safety, or welfare requires emergency action" prior to the initiation of summary suspension proceedings. MCL 333.16233(5).

34. On information and belief, Defendants did not conduct the required review and instead arbitrarily suspended a licensee's license to practice their chosen health profession simply on the basis of "case closure" by HPRP.

35. In furtherance of this broad unconstitutional policy, Defendants have failed to "incorporate" findings indicating that a licensee is an imminent threat to the public health safety and welfare in to the Order of Summary Suspension as required by MCL 24.292. Defendant BHCS and Carole Engel's Summary Suspension orders – in every case - fail to state why emergency action is required.

36. Without a factual review by a board member or his or her designee and a specific finding as to the necessity of Summary Suspension, the risk of erroneous deprivation is high.  Further, the deprivation is based off of administrative "case closure" by HPRP and is not tied to a particular reason for case closure.

37. Upon post deprivation review, a staggering number of summary suspensions are "dissolved" indicating that erroneous deprivation is a very frequent occurrence.

38. Any reasonable person would understand that this policy itself is a violation of constitutional rights; namely, Due Process under the Fourteenth Amendment.

39. The fiscal burdens of statutorily required board review of a file is de minimis and is not so time consuming or expensive as to justify a broad policy that all licensees whose cases are closed by HPRP require summary suspension.

40. By the arbitrary application of such a policy that prevents case-by-case review of each licensee's case to determine if "the public health, safety, or welfare requires emergency action" prior to the initiation of summary suspension proceedings in accordance with MCL 333.16233(5), Defendants were acting as administrators and are stripped of any Eleventh Amendment immunity they may otherwise avail themselves of.

41. HPRP and Defendants Caroline Batchelor, Stephen Batchelor, Nikki Jones, and Susan Bushong engaged in "treatment" not "monitoring" and often closed a case because the health professional refused to discontinue long term and established physician-patient relationships for complex medical issues, in favor of the HPRP favored contractor, who for the most part was not interested in the long term health care of the professional and more interested in receiving recurring referrals from HPRP.

42. Coupled with the arbitrary application of suspension procedures and the threat of certain suspension in the event of non-compliance with HPRP's requests, licensees were forced by the above named Defendants into

inflexible two (2) or three (3) year Monitoring Agreements costing between $6,000 to $9,000 per year, and the arbitrary application of across-the-board treatment requirements not tailored to a licensee's case by "approved treatment providers" but uniformly instituted by HPRP.

43. The conduct of each Defendant deprived each Class member of the rights secured under the Fourteenth Amendment, "nor shall any state deprive any person of life, liberty or property without due process of law" by taking, among other things, the following actions, to wit:

a. Unanimous application of summary suspension procedures in the event of HPRP non-compliance;

b. Customs, policies or procedures requiring that licensees discontinue treatment with their private healthcare providers; go outside their health insurance contracts; privately pay for HPRP selected providers at extremely inflated and arbitrary rates; and often are forced to accept reckless medical decisions made by specifically chosen HPRP providers in deprivation of their life and liberty or be faced with a summary suspension and loss of property, inter alia professional license;

c. Customs, policies or procedures requiring that licensees sign HPRP agreements containing standard clauses under the threat of automatic

license suspension which amounted to constitutional deprivations of a property right, inter alia professional license.

d.  Customs, policies or procedures preventing HPRP approved providers from making treatment recommendations to HPRP.

e.  Customs, policies, or procedures requiring that licensees sign broad releases rendering their involvement non-confidential and subjecting them to exposure of private medical identifying information, in violation of their right of privacy and forced violation of HIPAA rules.

f.  Summary suspension powers were improperly delegated to HPRP and licensees were required to cease from working solely at the request of HPRP with the continued threat of Summary Suspension, in violation of their property rights.

44. That as a direct and proximate result of willful, wanton, reckless, and callous conduct and omissions of each Defendant, individually, and as agents of the State of Michigan, members of the Class suffered loss of life (proper health care), liberty, and property, together with significant financial harm, emotional distress, mental anguish, attorney fees, and costs of litigation.

45. Wherefore, Plaintiff requests the following relief:

a.  Compensatory and punitive damages;

b. Attorney fees and expenses;

c. Any and all other damages otherwise recoverable under USC Section 1983 and Section 1988; and

d. A permanent injunction preventing Defendants from:

i. Making treatment decisions regarding the care of licensee's participating in HPRP.

ii. Further breaching the September 1, 2012 contract with the State of Michigan. (**Exhibit A**)

iii. Suspending the license of a health professional governed under the Public Health Code without the express written approval by the chair of the appropriate board or task force or his or her designee, and the specific justification for emergency deprivation as required by MCL 333.16233(5).

iv. Upholding any Summary Suspension levied as a result of the unconstitutional policies as described above, and immediate reinstatement of said licensees pending a pre-deprivation hearing.

## COUNT II

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS IN VIOLATION OF 42 U.S.C §1985 BY BHCS, ULLIANCE, INC., CAROLE ENGLE, CAROLYN BATCHELOR, LMSW, STEPHEN BATCHELOR, SUSAN BUSHONG, AND NIKKI JONES, LMSW

46. Plaintiffs fully incorporate and adopt each and every allegation of this complaint as if fully stated herein.

47. On September 1, 2012, Ulliance, Inc. entered into a contract with the State of Michigan as the corporation responsible for administering the Health Professional Recovery Program. **(Exhibit A)**

48. The aforementioned contract is set to expire in August, 2015.

49. Under the terms of said contract, Ulliance, Inc. is required to undertake certain tasks in the administration of HPRP on behalf of the State of Michigan as established by Public Act 80 of 1993.

50. It is expressly stated in the contract that HPRP is not a treatment program and does not provide intervention, evaluation, treatment, or continuing care services.  HPRP is a monitoring program that coordinates services between participants and approved service providers. **(Exhibit A; p.33)**

51. At various times between September 1, 2012, and the present, HPRP and Defendants Ulliance, Caroline Batchelor, Stephen Batchelor, Nikki Jones and Sue Bushong consistently exceed their authority under the aforementioned contract and supplanted its treatment recommendations in

place of recommendations made by approved service providers designed to arbitrarily increase the number of participants in the program.

52. On information and belief, HPRP and the above named Defendants have recently enacted a policy "approved service providers" are no longer permitted to provide treatment recommendations to HPRP and are merely permitted to provide a diagnosis.

53. Additionally, "approved providers" are instructed that they cannot use their independent clinical judgment but must defer to specific clinical requirements of HPRP when providing a diagnosis.

54. On information and belief, HPRP and the above named Defendants have developed a closed network of "approved service providers" and sent a disproportionate number of licensees to a small number of "approved service providers" who are more likely to recommend an HPRP contract and has removed "approved service providers" from the "approved list" when they exercise independent judgment that individuals do not require HPRP monitoring.

55. On information and belief, HPRP and the above named Defendants consistently used intimidation and threats of summary suspension against those who chose not to sign broad releases, refrain from taking medications

approved by treating physicians, or otherwise submit to HPRP's broad requests.

56. Moreover, HPRP and specifically Defendant, Carolyn Batchelor, have used intimidation and threats against "approved providers" in order to coerce them to recommend that licensees qualify for monitoring.

57. In one such instance of furtherance of said conspiracy, on July 1, 2014, Martha Harrell, LMSW was contacted by Carolyn Batchelor, the Director of HPRP, one (1) day after testifying that Kelly Ann Schultz, P.A. did not meet the requirements for an HPRP contract and was told that if she continued to testify on behalf of licensees she could no longer be on the HPRP approved provider list.  **(Exhibit B; Affidavit of Martha Harrell)**

58. In each instance of HPRP case closure, the BHCS and Carole Engle, arbitrarily applied summary suspension procedures and summarily suspend a licensee's license simply because of the decision to not voluntarily participate in HPRP.

59. The Bureau of Healthcare Services arbitrary application of summary suspension procedures, coupled with the flagrant due process violations committed by HPRP under the threat of certain license suspension, amount to a conspiracy in violation of 42 U.S.C. §1985 designed to arbitrarily increase HPRP participants through threats, intimidation, force, and

coercion and systematically deprive Plaintiffs and similarly situated Class Members of due process and the equal protection of the laws and privileges and immunities of the laws.

60. At all times relevant, the Defendants were acting under the color of law, namely MCL 333.16168, MCL 333.16233 and 333.16167.

61. At all times relevant between September 1, 2012, and the present, Defendants were engaged in a conspiracy for the purpose of depriving, either directly or indirectly, the named Plaintiffs and other similarly situated individuals, namely health professionals, governed by the Public Health Code, the equal protection of the rights secured under the Fourteenth Amendment, "nor shall any state deprive any person of life, liberty or property without due process of law" by taking the property interest/professional license and by depriving Class Members of their liberty and life by forcing them to accept the HPRP provider and the treatment decision made by non-licensed state actors, namely HPRP employees and not the healthcare provider of the licensee's choice.

62. During relevant times, Defendants acted in furtherance of the conspiracy by arbitrarily depriving health professionals of due process, through the arbitrary application of suspension procedures and through the threat of

summary suspension in violation of the licensee's constitutional rights of due process.

63. During relevant times, Defendants used threats, intimidation, and coercion toward licensed health professionals to secure their compliance with HPRP.

64. During relevant times, Defendants used threats, intimidation, and coercion toward "approved treatment providers" in order to arbitrarily increase the number of licensees involved in the HPRP monitoring program.

65. As a direct and proximate result of the Defendants' conduct, the named Plaintiffs and similarly situated individuals were deprived of their constitutionally protected rights of life, liberty and property, secured by the Fourteenth Amendment; and were forced to enter into arbitrary and capricious treatment programs set up and designed by HPRP, with HPRP approved providers that were forced to follow HPRP universal guidelines and not in the best interest of the licensee when making healthcare decisions. All of this was done at the direction of HPRP and BHCS, in known violation of law, and under the constant threat that the licensee either follow everything HPRP said or face certain suspension and/or revocation of their professional license.

66. As a direct and proximate result of Defendants' willful, wanton, reckless, and callous conduct, the named Plaintiffs and similarly situated individuals suffered loss of life, liberty and property and experienced mental anguish and financial harm.

67. Wherefore, Plaintiffs request the following relief:

a. Compensatory and punitive damages;

b. Any and all other damages otherwise recoverable under 42 U.S.C. § 1985, including attorney's fees;

## **COUNT III**

### **NEGLECT TO PREVENT CONSPIRACY PURSUANT TO 42 U.S.C. 1986 BY BHCS, ULLIANCE, INC., CAROLE ENGLE, CAROLYN BATCHELOR, LMSW, STEPHEN BATCHELOR, SUSAN BUSHONG, AND NIKKI JONES, LMSW**

68. Plaintiffs incorporate and adopt each and every paragraph of this Complaint as if fully stated herein.

69. At relevant times, Defendants, Ulliance, Inc., BHCS, Carolyn Batchelor, Stephen Batchelor, Susan Bushong, Nikki Jones and Carole Engle had knowledge of the aforementioned wrongs conspired to be done by the aforementioned Defendants, and failed to prevent the commission of the same, or neglected or refused to do so.

70. As a result of reasonable diligence executed by any of the aforementioned Defendants, harm to the Plaintiffs and similarly situated individuals could have been prevented.

71. The deprivations of constitutional rights at the hands of the Defendants were so obvious that a reasonable person would have recognized that severe deprivations were occurring.

72. As a direct and proximate result of the aforementioned Defendants failure to act, the named Plaintiffs and similarly situated individuals have suffered injury, including but not limited to, suspension of their license, involuntary admission into a two (2) to three (3) year treatment program, loss of employment, loss of hospital privileges, and unnecessary entries into the National Practitioner Databank.

73. Wherefore, Plaintiffs request the following relief:

   a. Compensatory and punitive damages;

   b. Any and all other damages otherwise recoverable under 42 U.S.C. §1986, including attorney's fees;

## BREACH OF CONTRACT (3rd PARTY BENEFICIARY) PURSUANT TO MCL 600.1405 AGAINST ULLIANCE, INC., CAROLYN BATCHELOR, STEPHEN BATCHELOR, SUSAN BUSHONG, AND NIKKI JONES

74. Plaintiffs incorporate and adopt each and every paragraph of this Complaint as if fully stated herein.

75. On September 1, 2012, Ulliance, Inc. entered into a contract with the State of Michigan as the corporation responsible for administering the Health Professional Recovery Program. **(Exhibit A)**

76. Members of the Class under this cause of action are HPRP participants between September 1, 2013, and the present.

77. The aforementioned contract is set to expire in August of 2015. However, Ulliance, Inc. has the option to exercise two (2) one-year extensions.

78. Under the terms of said contract, Ulliance, Inc. is required to undertake certain tasks in the administration of HPRP on behalf of the State of Michigan as established by Public Act 80 of 1993 and <u>directly</u> for the benefit of HPRP participants.

79. The stated intent of the contract is to provide a "<u>confidential, non-disciplinary</u>, treatment-oriented approach to address these public health and safety issues <u>while assisting licensees in their recovery.</u>" **(Exhibit A; p.33)**

80. A number of other requirements under the contract specifically require HPRP to perform tasks directly for the benefit of HPRP participants:

   a. HPRP is required to individually tailor to each contract licensee's specific situation. **(Exhibit A; p.33)**

b. HPRP is required to maintain the confidentiality of those licensees whose involvement in the program is on a voluntary basis.  (**Exhibit A; p.33**);

c. HPRP is required to refrain from making treatment decisions regarding a licensee;  (**Exhibit A; p.33**)

d. HPRP is required to provide HPRP participants with a full list of approved HPRP providers;  (**Exhibit A; p.39**)

e. HPRP case managers can only have 80 cases per manager;

f. HPRP must follow the rules approved by the Health Professional Recovery Committee (HPRC).  The HPRC policies and procedures contain exhaustive guidelines most of which are in place for the benefit of participants during their recovery;  (**Exhibit A; p.43**)

g. HPRP is expressly prevented from engaging in treatment of licensees.  (**Exhibit A; p.33**)

81. Additionally, the Department of Licensing and Regulatory Affairs specifically contends that HPRP participants are the direct beneficiaries of HPRP, under the heading "What are the Benefits of HPRP?" the Department of Licensing and Regulatory Affairs provides, "It is the philosophy of the HPRP that substance use and mental illness disorders are treatable conditions.  By providing health professionals an opportunity to enter into treatment and to recover from their diseases early in the disease

process,   the   HPRP   can   serve   <u>to   minimize   negative   impacts   on   licensees/registrants</u>…"[2]

82. Pursuant to the contract, HPRP owes a duty to HPRP participants as intended beneficiaries to provide them with a voluntary and confidential method of seeking treatment for substance use and mental health related issues.

83. Further, Employees of HPRP and Ulliance, as licensed health professionals in the State of Michigan, owe HPRP participants a pre-existing duty to provide only the specifically tailored treatment that is needed to treat a qualifying diagnosis and treat participants in an ethical and confidential manner.

84. Moreover, the State of Michigan and HPRP, pursuant to MCL 333.16165, 333.16167, 333.16168, 333.16169 and 333.16167, owed a pre-existing duty to provide health professionals in the State of Michigan with a confidential and voluntary avenue of recovery for substance abuse related issues.

---

[2] Department of Licensing and Regulatory Affairs, *Health Professional Recovery Program General Information*, *available at* http://www.michigan.gov/lara/0,4601,7-154-35299_63294_63303_27985-43107--,00.html

85. It is expressly stated in the contract that "HPRP is not a treatment program [and] the HPRP does not provide intervention, evaluation, treatment, or continuing care services.  HPRP is a monitoring program that coordinates services between participants and approved service providers."  **(Exhibit A; p.33)**

86. Pursuant to the aforementioned contract, HPRP is required to individually tailor to each contract licensee's specific situation.  **(Exhibit A; p.33)**

87. Pursuant to the aforementioned contract, HPRP is required to refrain from making treatment decisions regarding the individual treatment of a licensee.  **(Exhibit A; p.33)**

88. Pursuant to the aforementioned contract, HPRP is required to maintain the confidentiality of those licensees whose involvement in the program is on a voluntary basis.  **(Exhibit A; p.33)**

89. Pursuant to the aforementioned contract, HPRP is required to provide HPRP participants with a full list of approved HPRP providers.  **(Exhibit A; p.39)**

90. Pursuant to the aforementioned contract, HPRP case managers can only have 80 cases per manager.

91. Pursuant to the aforementioned contract, HPRP must follow the rules approved by the Health Professional Recovery Committee.  **(Exhibit A; p.43)**

92. At various times between September 1, 2012, and the present, HPRP has consistently exceeded its authority under the aforementioned contract and made treatment decisions regarding the care of licensees.

93. At various times between September 1, 2012, and the present, HPRP has improperly disclosed participant files to LARA and BHCS after HPRP case closure.

94. At various times between September 1, 2012, and the present, HPRP has failed to tailor each contract to meet the needs of each licensee and instead has only varied the length of the contract based on the diagnosis – either one (1), two (2), or three (3) years.

95. At various times between September 1, 2012, and the present, HPRP has failed to provide participants with a full list of HPRP approved providers and has instead only provided a list of one (1) to three (3) providers specifically selected because of their history in determining that participants require a contract.

96. On information and belief, at various times between September 1, 2012 and the present, case managers had loads grossly exceeding the amount required by the contract.

97. At various times between September 1, 2012 and the present, HPRP has failed to follow the rules promulgated by the Health Professional Recovery committee.

98. As a direct and proximate cause of the aforementioned, Defendants' breach of the September 1, 2012 contract with the State of Michigan, Plaintiffs and similarly situated members of the Class incurred injuries such as economic damages resulting from unnecessary treatment, professional embarrassment, lost wages, etc.

99. Wherefore, Plaintiffs request the following relief:

    a. Compensatory and punitive damages;

    b. Consequential damages;

    c. Any and all other damages otherwise recoverable for a breach of contract; and

    d. Attorney fees.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: January 26, 2015      s/Ronald W. Chapman II
Ronald W. Chapman (P37603)
Ronald W. Chapman II (P73179)
Attorneys for Plaintiffs
40950 Woodward Ave., Suite 120
Bloomfield Hills, MI 48304
(248) 644-6326
rchapman@chapmanlawgroup.com
rwchapman@chapmanlawgroup.com

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all causes of action in this matter and as to any question of damages.

Respectfully submitted,

CHAPMAN LAW GROUP

Dated: January 26, 2015      s/Ronald W. Chapman II
Ronald W. Chapman (P37603)
Ronald W. Chapman II (P73179)
Attorneys for Plaintiffs
40950 Woodward Ave., Suite 120
Bloomfield Hills, MI 48304
(248) 644-6326
rchapman@chapmanlawgroup.com
rwchapman@chapmanlawgroup.com