UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL LUCAS, ET AL.,

           Plaintiffs,

v.

ULLIANCE, INC., ET AL.,

           Defendants.

_____/

Case No. 15-10337

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ULLIANCE, JONES, BATCHELOR, AND BATCHELOR'S MOTION TO DISMISS [19]; GRANTING IN PART AND DENYING IN PART DEFENDANTS DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS, ENGLE, AND BUSHONG'S MOTION FOR JUDGMENT ON THE PLEADINGS [38]; AND DENYING PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE [60]**


      The Health Professional Recovery Program (HPRP) is a program created by the Michigan legislature to help ensure that licensed healthcare professionals do not continue to suffer from mental health and substance abuse problems that might cause them to harm the public.  State law requires Michigan's Department of Licensing and Regulatory Affairs (LARA) to enter into a contract with a private entity to oversee the HPRP.  LARA entered into such a contract with Ulliance, Inc.  Plaintiffs are health professionals who at some point were reported to the state, by

1 of 42

Ulliance, as noncompliant with the HPRP.  LARA summarily suspended each Plaintiff's license, without a hearing, after such report.  Plaintiffs bring the following claims against LARA, Ulliance, and employees of both: procedural due process, substantive due process, conspiracy to interfere with civil rights, neglect to prevent said conspiracy, breach of contract, civil conspiracy, and disability discrimination in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973.  They seek to sue on behalf of a class of all HPRP participants from January 2011 to the present.

Defendants Ulliance, Jones, Batchelor, and Batchelor (the Ulliance Defendants) filed a Motion to Dismiss [Dkt. #19] on April 3, 2015.  Defendants LARA, Engle, and Bushong (the LARA Defendants) filed a Motion for Judgment on the Pleadings [38] on August 19, 2015.  The motions were fully briefed.  At the conclusion of a hearing held on January 22, 2016, the Court took the motions under advisement. At the hearing, the Court requested additional information.  In response to the Court's request, Plaintiff filed a Supplemental Brief [46] on February 23, 2016; the LARA Defendants filed their own Supplemental Brief [56] on March 18, 2016; and the Ulliance Defendants filed a final Supplemental Brief [59] also on March 18, 2016.

On March 28, 2016, Plaintiffs filed a Motion for Order to Show Cause [60].  Plaintiffs accuse the Ulliance Defendants of misrepresenting, in their supplemental

brief, some of the supplemental information requested by the Court. They request

sanctions, including denial of the Ulliance Defendants' Motion to Dismiss, under

Federal Rule of Civil Procedure 37(b)(2)(A), which authorizes sanctions where a

party "fails to obey an order to provide or permit discovery." Plaintiffs' motion is

**DENIED**. The Court's request for supplemental information was not intended as a

discovery order.[1]

      For the reasons stated below, the Court rules on Defendants' challenges to

Plaintiffs' claims as follows:

- Counts One and Two (procedural due process): Plaintiffs have stated a claim against Defendants LARA and Engle only. Eleventh Amendment immunity bars the claim against LARA and the claim for damages against Engle in her official capacity. Quasi-judicial immunity bars the claim for damages against Engle in her individual capacity. Thus, the claim survives only to the extent that the *Ex Parte Young* doctrine permits a claim for injunctive relief against Engle in her official capacity.
- Count Three (substantive due process): Plaintiffs have failed to state a claim.
- Count Four (conspiracy to interfere with civil rights): Plaintiffs have failed to state a claim.
- Count Five (neglect to prevent conspiracy to interfere with civil rights): Plaintiffs have failed to state a claim.
- Count Six (breach of contract): Plaintiffs have stated a claim against Defendants Ulliance and LARA only. Ulliance has not established immunity under Michigan law.
- Count Seven (civil conspiracy): Plaintiffs have failed to state a claim.
- Count Eight (ADA and Rehabilitation Act): Plaintiffs have stated a claim only against Defendant LARA and against Defendant Engle in her official capacity (amounting to a claim against the state of Michigan). Defendants have not established Eleventh Amendment immunity.

---

[1] Though the Court refers to some of the supplemental information as background below, it does not rely on the supplemental information in its analysis.

The Court further holds that the LARA Defendants have not established a need for the Court to abstain, under the *Younger* doctrine, from hearing the claims brought by Plaintiffs Lucas and Schultz.  Accordingly, the Ulliance Defendants' Motion to Dismiss [19] is **DENIED** with respect to Plaintiffs' against Defendant Ulliance for breach of contract, and otherwise **GRANTED**.  The LARA Defendants' Motion for Judgment on the Pleadings [38] is **DENIED** with respect to (1) Plaintiffs' procedural due process claim against Defendant Engle, to the extent permitted under the *Ex Parte Young* doctrine; (2) Plaintiffs' claim against Defendant LARA for breach of contract; and (3) Plaintiffs' claims under the ADA and Rehabilitation Act against Defendant LARA and against Defendant Engle in her official capacity. Their motion is otherwise **GRANTED**.

FACTUAL BACKGROUND

## I.    Defendants and the HPRP

Defendant LARA is a Michigan government agency that oversees the Bureau of Healthcare Services, which is responsible for the regulation of licensed health professionals.  Defendant Carole Engle was formerly Director of the Bureau of Healthcare Services.  Defendant Susan Bushong is a LARA employee involved in the department's oversight of health professionals.

Michigan law authorizes disciplinary subcommittees to take disciplinary action against licensed health professionals on account of mental illness or substance abuse that may impair their ability to practice their professions in a safe and competent manner.  *See* Mich. Comp. L. § 333.16221(a), (b)(ii)-(iii).  LARA is authorized to investigate such grounds for disciplinary action and to provide the appropriate disciplinary subcommittee with an administrative complaint.  *Id.* § 333.16221.  The disciplinary subcommittee may proceed to impose sanctions, including suspension or revocation of the professional's license, subject to review by the Michigan Court of Appeals.  *Id.* §§ 333.16226(1)-(2), 333.16237(6).

In addition to initiating the aforementioned disciplinary proceedings, LARA may summarily suspend a license, after consulting with the chair of the appropriate board or task force, if it finds that the public health, safety, or welfare requires emergency action.  *Id.* §§ 333.16233(5), 24.292(2).  If the licensee petitions for dissolution of the summary suspension, LARA must immediately request an expedited hearing before an administrative law judge (ALJ).  Mich. Admin. Code R. 792.10702(1).  The ALJ must dissolve the summary suspension unless she finds that "sufficient evidence has been produced to support a finding that the public health, safety, or welfare requires emergency action and a continuation of the suspension order."  *Id.* R. 792.10702(4).

Such disciplinary proceedings are not the only options provided by
Michigan law for responding to health professionals' struggles with mental illness
or substance abuse.  In 1993, the Michigan legislature created the HPRP.  1993
Mich. Legis. Serv. P.A. 80 (H.B. 4076) (WEST); *see also* Mich. Comp. L.
§ 333.16167.  Michigan law defines the HPRP as "a nondisciplinary, treatment-
oriented program for impaired health professionals."  Mich. Comp L.
§ 333.16105a.  It defines "impaired" health professionals as those suffering from a
current or immediately impending inability to practice in conformance with
minimum standards due to "substance abuse, chemical dependency, or mental
illness or . . . use of drugs or alcohol."  *Id.* § 333.16106a.

The HPRP is under LARA's purview.[2]  *Id.* §§ 333.16104(3), 333.16165(1).
LARA must "[e]stablish the general components of the health professional
recovery program and a mechanism for monitoring health professionals who may
be impaired."  *Id.* § 333.16167(a).  However, rather than manage the HPRP
singlehandedly, LARA is required by statute to "enter into a contract with a private
entity to act as a consultant to assist the committee with the administration of the
health professional recovery program."  *Id.* § 333.16168(1).  LARA entered into

---

[2] The component of LARA directly responsible for the HPRP is the Health
Professional Recovery Committee.  The Court will refer to the committee as
LARA for simplicity's sake.

such a contract with Defendant Ulliance in September 2012.[3]  Defendants Carolyn

Batchelor, Stephen Batchelor, and Nikki Jones are Ulliance employees involved in

Ulliance's work under the contract.  The contract requires Ulliance to follow HPRP

policies and procedures approved by LARA.  LARA has set forth such policies and

procedures in a manual submitted as an exhibit by the Ulliance Defendants.

LARA is directed by statute to work in conjunction with the private

contractor in executing its duties to "develop and implement criteria for the

identification, assessment, and treatment of health professionals who may be

impaired" and to "develop and implement mechanisms for the evaluation of

continuing care or aftercare plans for health professionals who may be impaired."

*Id.* § 333.16167(b),(c).  If LARA receives information from a LARA employee or

contractor that purportedly establishes reasonable cause to believe that a health

professional may be impaired, LARA must ask the private contractor to determine

whether the health professional may be impaired.  *Id.* § 333.16169(1).  If the

private contractor proceeds to determine that the health professional may be

impaired, LARA may accept the professional into the HPRP if the professional

acknowledges her impairment, voluntarily limits her practice as determined

necessary by LARA, and voluntarily agrees to participate in a treatment plan

---

[3] The contract was set to expire on August 31, 2015.  At oral argument, counsel for
the Ulliance Defendants represented that the contract had been extended for a year
and that Ulliance remains the HPRP contractor.

meeting criteria developed by LARA (in cooperation with the contractor).  *Id.* §
333.16170(1).

LARA must require the private contractor "to report immediately to the
department any circumstances known to the private entity that indicate that an
impaired health professional may be a threat to the public health, safety, or
welfare."  *Id.* § 333.16168(2).  If LARA determines, based on information received
in such a report, "that the health professional involved may be a threat to the public
health, safety, or welfare" and has violated certain articles of the Michigan Public
Health Code or rules promulgated thereunder, LARA may proceed under statutory
provisions authorizing investigation and the initiation of disciplinary proceedings.
*Id.* § 333.16169(2).  LARA's contract with Ulliance requires a report of HPRP
noncompliance "especially" where the noncompliance has a potential for placing
patients or the public at risk.  Further, LARA's HPRP manual, which Ulliance is
contractually obligated to follow, requires Ulliance to report licensees to LARA
during the HPRP intake process in certain circumstances.  These circumstances
include a licensee's refusal to undergo a required evaluation or, after an evaluation
finds a licensee in need of treatment, to execute a monitoring agreement.

By statute, the identity of an HPRP participant is confidential "unless the
health professional fails to satisfactorily participate in and complete a treatment
plan" or falsely represents that they have completed a treatment plan.  *Id.* §

333.16170a(2). The contract between LARA and Ulliance identifies certain information as confidential, including participants' protected health information and information that identifies a participant. The contract prohibits Ulliance from disclosing designated confidential information to third parties outside limited circumstances.[4]

## II.    Plaintiffs' Experiences with the HPRP

Plaintiffs are four health professionals who were reported HPRP noncompliant by Ulliance and had their licenses summarily suspended by LARA. They seek to sue on behalf of the class of all HPRP participants from January 2011 to the present.

### A.    Carol Lucas

Plaintiff Lucas is a registered nurse. She self-referred to the HPRP for an evaluation in November 2011, at the suggestion of a therapist. She completed an intake interview, during which she disclosed that she had received inpatient treatment at a hospital after an August 2011 suicide attempt and had acknowledged suffering from depression and alcohol dependence. Lucas declined to be evaluated by an HPRP provider due to the expected financial costs of the treatment the HPRP

---

[4] Section 2.100 of the contract, governing non-disclosure of confidential information, was deleted by a June 2014 Change Notice and replaced by Section 9 of that notice.

would require.  Ulliance notified LARA that Lucas may be a threat to the public safety, health, or welfare.  LARA opened an investigation.

In February 2012, LARA issued an investigative order, authorized by the chairperson of the disciplinary subcommittee of the Board of Nursing, compelling Lucas to submit to an evaluation by Sabrina Mitchell, L.M.S.W.  LARA notified Lucas of a procedure to challenge the order, but she submitted to the evaluation without challenging it.  After completing the evaluation on March 21, 2012, Mitchell diagnosed Lucas with alcohol dependency in full remission, sedative/hypnotic/anxiolytic abuse, major depressive disorder, and a rule-out diagnosis of borderline personality disorder.  She recommended that Lucas participate in the HPRP pursuant to a three-year monitoring agreement.

Shortly after Mitchell's evaluation, Lucas began treatment (independently of the HPRP) with therapist David English.  English was not on the HPRP's list of approved providers, and Lucas did not request that the HPRP approve him. English subsequently found that Lucas did not suffer from alcohol dependence and did not need treatment recommended by the HPRP.

On April 26, 2012, LARA issued an administrative complaint against Lucas's license, alleging mental health and substance abuse conditions subject to disciplinary proceedings under Michigan law.  *See* Mich. Comp. L. § 333.16221(a), (b)(ii)-(iii).  LARA did not summarily suspend Lucas's license.

10 of 42

Before a merits hearing on the complaint was held, Lucas resolved the complaint by entering into a consent order.  Pursuant to the consent order, she admitted the allegations and agreed to a two-year probation term, with conditions including an HPRP evaluation.  In December 2012, Lucas signed a three-year HPRP monitoring agreement.

In June 2013, after finding that the requirements of the monitoring agreement exacerbated her depression, Lucas notified the Ulliance Defendants that she was withdrawing from the HPRP.  Ulliance notified LARA of Lucas's noncompliance with her monitoring agreement.  On June 27, 2013, after consulting with the chairperson of the Board of Nursing, LARA summarily suspended Lucas's license and issued an administrative complaint.  Lucas petitioned to dissolve the summary suspension.  After holding a dissolution hearing on July 30, 2013, an ALJ dissolved the summary suspension.  The same ALJ held a merits hearing on September 12, 2013.  The ALJ refused to consider evidence that was presented at the summary suspension hearing and not presented again at the merits hearing.  On October 8, 2013, the ALJ issued a recommended decision finding the complaint meritless.

On December 5, 2013, the disciplinary subcommittee of the Board of Nursing accepted the ALJ's recommendations in part and rejected them in part. The subcommittee found that the ALJ erroneously refused to consider all evidence

presented at the summary suspension hearing, since the summary suspension hearing record "shall become a part of the record at any subsequent hearing in the contested case."  Mich. Admin. Code R. 792.10702(6).  The subcommittee found a preponderance of evidence supporting the alleged violations and, on April 28, 2014, issued a final order suspending Lucas's license.  The order authorized the automatic reinstatement of her license if, within six months, she signed an HPRP monitoring agreement or an HPRP evaluation found no need for monitoring.  Defendant Engle signed the order as the subcommittee's designee.  Lucas did not appeal the order to the Michigan Court of Appeals.

Lucas was evaluated by Dr. Bela Shah, an HPRP provider, in May 2014.  Shah diagnosed Lucas with major depression and opined that Lucas "should be monitored closely under the care of psychiatrist and therapist," but did not expressly recommend an HPRP monitoring contract.  Shah found no basis for substance abuse monitoring or restrictions on Lucas's access to controlled substances at work.  Ulliance subsequently asked Lucas to sign a two-year monitoring agreement that included requirements related to substance abuse.  Lucas was then evaluated by social worker Sabrina Mitchell (who had also evaluated her two years before).  In a handwritten document, which Ulliance contends it had not received prior to this litigation, Mitchell opines that Lucas does not need treatment.  Ulliance contends that Mitchell conducted her evaluation

without the benefit of seeing Shah's evaluation, due to Lucas failing to sign a release of medical records.

Lucas's license remains suspended pursuant to the Board of Nursing subcommittee's final order.

### B.    Tara Vialpando

Plaintiff Vialpando is a registered nurse.  She was referred to the HPRP by an anonymous source.  An HPRP evaluator recommended that she cease taking pain medications that her treating physicians had prescribed for years.  After she refused to comply with this treatment recommendation, Ulliance reported her noncompliant.  LARA issued an administrative complaint and summarily suspended her license.  After a hearing, an ALJ dissolved the summary suspension and expressed unease concerning the manner in which the summary suspension was largely attributable to an uninvestigated anonymous tip.  After a merits hearing, the ALJ dismissed the administrative complaint.

### C.    Scott Sanders

Plaintiff Sanders is a registered nurse.  He was referred to HPRP after being convicted of driving under the influence.  After two HPRP providers determined that he did not meet the criteria for substance abuse treatment, he refused to be evaluated by a third HPRP provider.  Ulliance reported him noncompliant.  LARA issued an administrative complaint and summarily suspended his license.  After a

hearing, an ALJ dissolved the summary suspension.  The ALJ ultimately dismissed the complaint, stating that Sanders had "some justification" for his concern "that he would be required to enter into a multiple year Monitoring Agreement requiring attending meetings, counseling, and drug screens, all at his expense without a clinical justification."

### D.     Kelly Anne Schultz

Plaintiff Schultz is a physician's assistant.  She was referred to the HPRP after being convicted for driving under the influence.  Ulliance sent a letter requesting her cooperation with HPRP to the wrong address.  When she did not respond to the letter, Ulliance reported her noncompliant.  LARA issued an administrative complaint and summarily suspended her license.  After a hearing, an ALJ dissolved the summary suspension.   Rather than proceed to a merits hearing, Schultz entered a consent order, pursuant to which she admitted the allegations and agreed to a one-year term of probation.

## III.   Defendants' Alleged Wrongdoing

Plaintiffs allege that the Ulliance Defendants mismanage the HPRP intake and evaluation process in order to expand the number of licensees participating in the HPRP.  Specifically, they allege that the Ulliance Defendants exclude healthcare providers from the HPRP who adhere to proper diagnostic criteria and provide "kickbacks" to HPRP providers who apply relaxed diagnostic criteria,

encouraging providers to erroneously find licensees in need of treatment. For instance, the Ulliance Defendants allegedly refer a disproportionate number of licensees for evaluation by Dr. Bela Shah and social worker Sabrina Mitchell, in exchange for those evaluators' use of relaxed diagnostic criteria for substance use disorder.

Plaintiffs further allege that Ulliance breaches its contract with the state by usurping HPRP providers' authority over treatment decisions and by using that authority without regard for licensees' individual needs. Specifically, they allege that the Ulliance Defendants determine the appropriate length and scope of a licensee's treatment, rather than deferring to the judgment of HPRP providers— even though the contract with the state requires that treatment be selected by an approved provider. Moreover, though the contract requires that licensees' treatment be tailored in length and scope according to licensees' individual situations, the Ulliance Defendants allegedly apply "the same across-the-board treatment mandates" to all licensees.

Plaintiffs allege that the Ulliance Defendants attempt to coerce licensees into participating in the HPRP by threatening them with suspension of their licenses if they reject the conditions of HPRP participation or delay signing an agreement to seek the advice of counsel. They further allege that the Ulliance Defendants have imposed an unauthorized condition of participation, requiring licensees to agree to

the release of their treatment records not only to LARA, but also to the Attorney General's Office and to the licensees' employers. They allege that Ulliance breaches its state contract by making such disclosures.

Plaintiffs allege that the LARA Defendants have adopted a policy of summarily suspending the license of any licensee reported HPRP noncompliant, without any individualized consideration of whether public health, safety, or welfare requires emergency action. The LARA Defendants allegedly prevent any HPRP provider from testifying at a summary suspension dissolution hearing unless the provider has been pre-selected as a "testifier" by the Ulliance Defendants. The Ulliance Defendants, in turn, allegedly train the selected providers to testify in a manner that obfuscates the realities of HPRP practice, and pay them in return for such testimony. Plaintiffs suggest that the Ulliance Defendants may further interfere with disciplinary proceedings; specifically, they allege that Defendant Carolyn Batchelor (of Ulliance) threatened to disenroll social worker Martha Harrell as an HPRP provider if she testified on Plaintiff Schultz's behalf at a merits hearing.

**ANALYSIS**

The Ulliance Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), while the LARA Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). On a Rule 12(b)(6)

motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Similarly, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Rush v. Mac*, 792 F.3d 600, 603 (6th Cir. 2015) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

The Court will first address, with respect to each of Plaintiffs' claims, whether Plaintiffs have stated a claim upon which relief can be granted. The Court will then address Defendants' immunity defenses and the LARA Defendants' request that the Court partially abstain from hearing this case under the *Younger* doctrine.

**I-II.  Procedural Due Process**

Counts One and Two are procedural due process claims, brought pursuant to 42 U.S.C. § 1983, against the LARA Defendants and the Ulliance Defendants, respectively. "To establish a procedural due process claim, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process

Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Services, LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). Defendants have not challenged the first two elements; the Court therefore assumes that the suspension of Plaintiffs' licenses deprived them of a protected interest. *See Watts v. Burkhart*, 854 F.2d 839, 842 (6th Cir. 1988) ("This circuit has recognized that the freedom to pursue a career is a protected liberty interest, and that state regulation of occupations through a licensing process gives rise to protected property interests.") (citing *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983)).

To assess the adequacy of the process used to deprive a plaintiff of a protected interest, the Court must balance (1) the plaintiffs' private interests; (2) the risk that the procedures used will cause an erroneous deprivation of the private interests; (3) the probable value of additional or substitute procedural safeguards, and (4) the government's interests, including the function involved and the burdens of different safeguards. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 485 (6th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The balance of these factors usually requires a pre-deprivation hearing. *Id.* (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). The balance will excuse the failure to hold a pre-deprivation hearing, however, "where a government

official reasonably believed that immediate action was necessary to eliminate an emergency situation and the government provided adequate post-deprivation process." *Id.* at 486 (citing *Harris v. City of Akron*, 20 F.3d 1396, 1403–05 (6th Cir. 1994); *Mithrandir v. Brown*, 37 F.3d 1499, at *2–*3 (6th Cir. 1994) (table decision)). Post-deprivation process may also suffice where the deprivation-causing conduct is "random and unauthorized." *Id.* at 485 n.4 (citing *Daily Servs.,* 756 F.3d at 901; *Zinermon*, 494 U.S. at 129).

The Court concludes that the adequacy of post-deprivation procedures is irrelevant, at least at this stage of the case. According to Plaintiffs' allegations, the summary suspension of their licenses was neither random nor unauthorized; Defendants have not claimed otherwise. The LARA Defendants argue that post-deprivation process sufficed because LARA, through Defendant Engle, acted to eliminate an emergency situation. Government officials cannot rely on their belief in exigent circumstances, however, without some showing that their belief was reasonable. *See id.* at 486. Defendants cannot make that showing now, since the Court must assume as true Plaintiffs' allegation that Engle decided to summarily suspend their licenses without even considering whether exigent circumstances existed.

Disregarding post-deprivation procedures, the Court concludes that the *Mathews* factors call for a pre-deprivation hearing. Plaintiffs' private interests are

significant because a summary suspension impacts their ability to practice their profession and earn a living.  *See id.* ("[T]he property interest in a person's means of livelihood is one of the most significant that an individual can possess.") (quoting *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988)).  Plaintiffs have pled facts supporting a significant risk of erroneous deprivation: they accuse LARA and Engle of summarily suspending their licenses for no reason other than a report of HPRP noncompliance, which may occur for reasons not probative of a threat to public health or safety (e.g., failing to respond to an initial HPRP communication sent to the wrong address).  Further, the fact that all of their summary suspensions were dissolved after a hearing suggests that the additional safeguard of a pre-deprivation hearing would have significant value.  Finally, a pre-deprivation hearing need not burden the government greatly, particularly in light of the government's existing practice of using the record of the summary suspension hearing at the merits hearing as well.  Thus, the government's interest in dispensing with a pre-deprivation hearing could only be of controlling weight due to a reasonable belief concerning exigent circumstances, which—as discussed above—cannot be established at this stage of the case.

The Court concludes that Plaintiffs have pled facts raising a plausible inference that the suspension of their licenses without a hearing violated due process.  However, Plaintiffs have not sufficiently pled causation with respect to

any defendant other than Defendants LARA and Engle.  To establish a § 1983 claim, a plaintiff must show that the defendant's conduct was both a cause in fact and a proximate cause of the denial of the relevant right.  *Powers v. Hamilton Cnty. Public Defender Com'n*, 501 F.3d 592, 608 (6th Cir. 2007) (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005)).  Proximate cause is "a kind of line-drawing exercise in which [courts] ask whether there are any policy or practical reasons that militate against holding a defendant liable even though that defendant is a but-for cause of the plaintiff's injury." *Id.* at 609 (citing Dobbs on Torts § 181).

Here, Plaintiffs have not alleged that Defendant Bushong or the Ulliance Defendants exercised any influence over Defendant Engle's decision to summarily suspend their licenses.  By alleging that Defendant Engle would not have summarily suspended their licenses unless the Ulliance Defendants reported them HPRP noncompliant, Plaintiffs have alleged but-for causation.  But Plaintiffs have not alleged that the Ulliance Defendants reported noncompliance except as required to fulfill Ulliance's contractual obligations to LARA.  More importantly, there is an intervening cause: Engle's alleged decision to abdicate her statutory duty to make a finding of exigent circumstances.  Accordingly, Plaintiffs have failed to state a § 1983 procedural due process claim against the Ulliance

Defendants and Defendant Bushong, since they have failed to adequately plead that they proximately caused the alleged violations.

In sum, Plaintiffs have stated a procedural due process claim only against Defendants LARA and Engle.

## III.   Substantive Due Process

Count Three is a substantive due process claim brought pursuant to 42 U.S.C. § 1983.  "Substantive due process is the doctrine that governmental deprivations of life, liberty or property are subject to limitations *regardless of the adequacy of the procedures employed*."  *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (emphasis added) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)) (internal quotation marks and brackets omitted).  The doctrine protects, inter alia, "the interest in freedom from government actions that 'shock the conscience.'"  *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003)).

Plaintiffs argue that Defendants have violated their fundamental right to choose their own healthcare, their fundamental right to refuse medical treatment, and/or their fundamental right to bodily integrity.  They do not allege, however, that they were literally forced to receive medical treatment; instead, they allege that "[l]icensees were forced to choose between forced medical care and their license."  Conditioning a health professional's license on treatment for mental health or

substance abuse problems does not necessarily shock the conscience; it can be

appropriate with adequate procedural safeguards.  Indeed, Plaintiffs' counsel

conceded at the hearing that Plaintiffs do not contest "the proposition that [a

licensed health professional] who does have a mental health or drug problem

should be subject to review for safety of the community."  Accordingly, even when

purportedly raising a substantive due process claim, Plaintiffs repeatedly challenge

the adequacy of Defendants' procedures: they allege that Defendants' "use of pre-

hearing deprivation procedures in every case of HPRP non-compliance was not

narrowly tailored to achieve a compelling government interest" and that

Defendants "forced Plaintiffs and the Class to undergo involuntary medical

treatment under the threat of license suspension without the benefit of a pre-

deprivation hearing."

In sum, Plaintiffs' due process allegations all sound in procedural due

process, since they turn on "the adequacy of the procedures employed."  *Range*,

763 F.3d at 588.  Plaintiffs have failed to state a substantive due process claim.

**IV–V.      Conspiracy to Interfere with Civil Rights (§ 1985); Neglect to
             Prevent Conspiracy (§ 1986)**

In Counts Four and Five, Plaintiffs bring claims for conspiracy to violate

civil rights, in violation of 42 U.S.C. § 1985(3), and for neglect to prevent such

conspiracy, in violation of 42 U.S.C. § 1986.  A neglect claim under § 1986 "is

derivative and conditioned on establishing a § 1985 violation." *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (citing *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc*., 32 F.3d 989, 994 (6th Cir. 1994)).  Section 1985, in turn, "only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *Id.* at 559 (quoting *Browder*, 630 F.2d at 1150).  Section 1985 "does not cover claims based on disability-based discrimination or animus." *Id.*  Further, its "fundamental rights" coverage extends only to claims of discrimination based on "the unique and peculiar fashion in which a class of victims exercises a fundamental right," such as discrimination against those who exercise their fundamental right to free speech by supporting the Democratic Party.  *Browder*, 630 F.3d at 1153–54.

Here, Plaintiffs have not raised allegations covered by § 1985(3).  Plaintiffs allege disability discrimination.  As mentioned above, § 1985(3) does not cover disability discrimination.  *Bartell*, 215 F.3d at 560.  Plaintiffs also argue that they have alleged discrimination against a class banding together to assert its members' fundamental rights to bodily integrity and freedom from involuntary treatment.  For the reasons discussed above with respect to Plaintiffs' substantive due process claim, Plaintiffs have not sufficiently pled a conspiracy to violate these rights.

Necessarily, then, they have not sufficiently pled a conspiracy to violate these rights based on the peculiar manner in which Plaintiffs exercised them. Plaintiffs have therefore failed to state a claim under § 1985(3). Accordingly, their derivative claim under § 1986 fails as well.

## VI. Breach of Contract

Count Six is a breach of contract claim, alleging that Defendants breached the contract between LARA and Ulliance. Defendants argue that Plaintiffs cannot maintain a breach of contract claim because they are neither parties to the contract nor third-party beneficiaries of the contract under Michigan law.

Michigan law employs an objective standard to determine if a party is a third-party beneficiary under a contract, looking only to the contract's language. *Shay v. Aldrich*, 790 N.W.2d 629, 639 (Mich. 2010) (citing *Guardian Depositors Corp. v. Brown*, 290 Mich. 433, 437 (Mich. 1939)). A plaintiff is a third-party beneficiary only if the contractual language demonstrates an undertaking directly for the benefit of the plaintiff, or for a sufficiently designated class including the plaintiff. *Id.* at 638 (citing *Koenig v. South Haven*, 460 Mich. 667, 683 (Mich. 1999)). The public at large is too broad a class to support third-party beneficiary status. *Johnson v. Doodson Ins. Brokerage, LLC*, 793 F.3d 674, 679 (6th Cir. 2015) (citing *Schmalfeldt v. North Pointe Ins. Co.*, 670 N.W.2d 651, 655 (Mich. 2003)).

Defendants argue that Plaintiffs are not third-party beneficiaries of the contract between Ulliance and LARA because the contract does not require Ulliance to do anything directly for the benefit of any designated class narrower than the public at large. They analogize this case to *Dakshinamoorthy v. Nat'l Ass'n of Boards of Pharmacy*, No. 09–11129, 2011 WL 1396797 (E.D. Mich. April 13, 2011) (unpublished). In *Dakshinamoorthy*, the plaintiff sued the National Association of Boards of Pharmacy (NABP) and its executive director for breach of contract, alleging that they breached a contract with the Michigan Board of Pharmacy when they invalidated his score on a pharmacy licensing exam. *Id.* at *1–*2. The court granted the defendants summary judgment, reasoning that they were entitled to Michigan statutory immunity and that the plaintiff was not a third-party beneficiary of the contract. *Id.* at *2–*3. The court explained that "the contract was primarily for the benefit of the NABP and the Michigan Board, as well as the people of the State of Michigan, to ensure that state-licensed pharmacists have some level of competence." *Id.* at *3.

The Court holds that Plaintiffs have sufficiently pled third-party beneficiary status under the contract. It may well be that the contract is primarily intended to benefit LARA (by fulfilling its statutory duty to cooperate with a private contractor in administering the HPRP) and the people of Michigan (by helping to fulfill HPRP's goal of protecting the public from risks caused by health professionals'

impairments).  But the standard for third-party beneficiary status under Michigan law, as set forth above, is not governed by the Court's impression of the primary purposes of the contract.  To the extent the *Dakshinamoorthy* decision implies otherwise, the Court declines to follow it.[5]

The language of the contract requires Ulliance to do several things directly for the benefit of a class, referred to in the contract, that includes Plaintiffs: licensees referred to the HPRP.  Ulliance is required to (1) provide participants with a full list of HPRP providers upon request; (2) ensure the length of a monitoring agreement is consistent with an evaluator's recommendation (subject to exceptions, which must be discussed with the evaluator and documented); (3) ensure that a monitoring agreement is tailored to an individual licensee's specific situation; and (4) refrain, in most circumstances, from disclosing confidential information concerning the licensees to third parties.  The benefit to licensees from compliance with these requirements is not merely incidental to the benefit to the state or to the public.

In sum, Plaintiffs have sufficiently pled third-party beneficiary status under the contract.  Since Defendants do not challenge this claim on any other basis, the

---

[5] As an unpublished district court decision, *Dakshinamoorthy* is not binding on this Court.  Though the decision was affirmed by the Sixth Circuit, the Sixth Circuit's decision was also unpublished and did not address the third-party beneficiary issue. *Dakshinamoorthy v. Nat'l Ass'n of Boards of Pharmacy*, 475 F. App'x 548, 550 (6th Cir. 2012).

Court concludes that Plaintiffs have stated a breach of contract claim against those defendants who are parties to the contract: Defendants Ulliance and LARA.

## VII.   Civil Conspiracy (§ 1983)

Count Seven is a claim for civil conspiracy under 42 U.S.C. § 1983. "A civil conspiracy under § 1983 or *Bivens* is an agreement between two or more persons to injure another by unlawful action." *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)) (internal quotation marks and brackets omitted). "A plaintiff must show that (1) a 'single plan' existed; (2) defendants 'shared in the general conspiratorial objective' to deprive the plaintiff of his constitutional rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused [the plaintiff's] injury.'" *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "[I]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). The pleading standard for § 1983 conspiracy claims is "relatively strict." *Id.* (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)).

Plaintiffs have failed to meet this standard.  Plaintiffs allege that Defendants conspired to deprive them of their equal protection and due process rights.  They offer no explanation concerning the plan to violate Plaintiffs' equal protection rights.  Further, as explained above, the only due process violation that Plaintiffs have adequately pled is the summary suspension of their licenses, without a hearing or proper finding of exigent circumstances, by LARA, through Defendant Engle.  Plaintiffs have not alleged any agreement concerning the decision by LARA/Engle to forego a hearing in each case.  Instead, Plaintiffs allege that "LARA ratifies the unconstitutional policies and demands of [the Ulliance Defendants] by immediately suspending the license of a licensee in the event of HPRP noncompliance without an investigation."  The allegation that the LARA Defendants "ratify" allegedly unlawful actions separately taken by the Ulliance Defendants does not constitute an allegation that the Ulliance and LARA Defendants shared an objective and acted according to a single plan.

Because Plaintiffs have not pled material facts supporting their civil conspiracy claim with sufficient specificity, Plaintiffs have failed to state a claim.

## VIII.  Disability Discrimination

Count Eight consists of claims for disability discrimination under the ADA and the Rehabilitation Act.  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation

in or be denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

"The phrase 'services, programs, or activities' encompasses virtually everything a

public entity does."  *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir.

2015) (quoting *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008)) (internal

brackets omitted).  Accordingly, it encompasses government licensing of health

professionals.  *See Hason v. Medical Bd. of California*, 279 F.3d 1167, 1172–73

(9th Cir. 2002).  Indeed, Title II regulations provide that a public entity "may not

administer a licensing … program in a manner that subjects qualified individuals

with disabilities to discrimination on the basis of disability, nor … establish

requirements for the programs or activities of licensees … that subject qualified

individuals with disabilities to discrimination on the basis of disability."  28 C.F.R.

§ 35.130(6).

The Rehabilitation Act provides that "[n]o otherwise qualified individual

with a disability . . . shall, solely by reason of her or his disability, be excluded

from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial

assistance."  *Babcock v. Michigan*, 812 F.3d 531, 540 (6th Cir. 2016) (quoting

29 U.S.C. § 794(a)).  The Rehabilitation Act's sole-cause standard does not apply

to ADA claims. *Anderson*, 798 F.3d at 357 n.1 (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012) (en banc)).

Plaintiffs allege that Defendants violated the ADA and Rehabilitation Act by summarily suspending their licenses "not because an investigation determined that there were factors indicating that they were a threat to the public health, safety, or welfare, but solely because they either had a disability or were erroneously regarded as having a disability and refused to accept unnecessary treatment at the hands of HPRP." This allegation does not state a claim against any defendant other than Defendants LARA and Engle; as explained above, Plaintiffs have not pled facts plausibly supporting any other defendant's responsibility for the suspension of their licenses. However, assuming as true Plaintiff's factual allegations concerning their status as qualified individuals, the allegation does state a claim against Defendants LARA and Engle. *See Hason*, 279 F.3d at 1171–73 (holding physician stated a Title II ADA claim by alleging that state medical board denied him a medical license on account of mental illness despite his status as a qualified individual). The claim may only proceed against Defendant Engle in her official capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not … provide for suit against a public official acting in his individual capacity."). For all intents and purposes, there is no surviving ADA claim against Engle herself; the official capacity claim is essentially against the

state of Michigan. *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) (citing

*Brotherton v. Cleveland*, 173 F.3d 552, 560-61 (6th Cir. 1999)).

Plaintiffs also allege that the Ulliance Defendants denied Plaintiffs, on

account of their perceived disabilities, the public benefits of "their licenses, rights

to due process, and availability of a state substance abuse program." Plaintiffs

vaguely allege that the Ulliance Defendants denied them these things via

unnecessary demands for treatment and monitoring. The Court holds that

Plaintiffs have not adequately pled the Ulliance Defendants' responsibility for such

deprivations.

Plaintiffs fault the Ulliance Defendants for ignoring the disparate impact

theory of ADA discrimination. However, Plaintiffs raised no disparate impact

allegations in their Second Amended Complaint and made no attempt to explain, in

their response briefs, how any challenged policies disparately impacted anyone on

the basis of disability. Even at oral argument, Plaintiffs' counsel did not articulate

a disparate impact theory with any precision, instead merely asserting a disparate

impact on "the class of people, licensed health professionals, who have a disability

and need real treatment, not the broad based treatment Ulliance provides or those

erroneously regarded as having a substance abuse disorder who do not need

treatment in the first place but are pushed through the treatment by Ulliance

unconstitutional policies." For lack of proper development, the Court deems the

disparate impact argument Plaintiffs may have intended to present forfeited.  *See e.g.*, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 n.9 (6th Cir. 2014) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

Finally, Defendants argue that the Rehabilitation Act does not apply because the HPRP is funded by licensing fees rather than federal money.  However, Plaintiffs' surviving disability discrimination claim concerns the suspension of their licenses by LARA—not by the HPRP.  Defendants have not addressed whether LARA receives federal financial assistance.  The Court therefore declines to hold the Rehabilitation Act inapplicable at this stage of the case.

In sum, Plaintiffs have stated claims under the ADA and Rehabilitation Act against Defendant LARA and against Defendant Engle in her official capacity.

## IX.   Immunity Defenses

### A.   Michigan Statutory Immunity

The Ulliance Defendants argue that they are immune to Plaintiffs' claims for damages under Michigan Compiled Laws § 333.16244(1).  As counsel for the Ulliance Defendants conceded at oral argument, this state-law immunity defense cannot apply to Plaintiffs' federal claims.  *See Rushing v. Wayne Cnty.*, 462 N.W.2d 23, 28 (Mich. 1990) (citing *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980); *Felder v. Casey*, 487 U.S. 131 (1988); *Owen v. City of Independence*, 445

U.S. 622, 647 n.30 (1980)).  Thus, it may only potentially apply to the breach of contract claim.

> The statute reads, in relevant part, as follows:
>
> A person . . . acting in good faith who makes a report; assists in originating, investigating, or preparing a report; or assists a board or task force, a disciplinary subcommittee, a hearings examiner, the committee, or [LARA] in carrying out its duties under [Article 15 of Michigan's Public Health Code] is immune from civil or criminal liability including, but not limited to, liability in a civil action for damages that might otherwise be incurred thereby.

Mich. Comp. L. § 333.16244(1); *see also id.* § 333.16104(3) (establishing that "the department," as used in the statute, means LARA).  LARA's duties concerning administration of the HPRP arise under Article 15, and the Ulliance Defendants' actions allegedly breaching the relevant contract were taken to assist LARA in carrying out those duties.  Nevertheless, Plaintiffs have alleged that the Ulliance Defendants acted in bad faith.  The Court cannot resolve the factual issue of good faith against Plaintiffs on the Ulliance Defendants' Rule 12(b)(6) motion to dismiss.  Thus, the Ulliance Defendants have not, at this point, established immunity under § 333.16244(1).

### B.   Eleventh Amendment Immunity

The Eleventh Amendment bars certain suits against a state by its own citizens.  *Babcock*, 812 F.3d at 533 (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).  "Damages actions against state officers in their official

capacities count as lawsuits against the State." *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). However, the *Ex Parte Young* doctrine "forecloses Eleventh Amendment immunity when an action is brought against a state official and seeks only prospective injunctive relief." *Babcock*, 812 F.3d at 541 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996)).

"Congress may abrogate the states' Eleventh Amendment sovereign immunity pursuant to the enforcement provisions of § 5 of the Fourteenth Amendment when Congress both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Id.* at 534 (quoting *Garrett*, 531 U.S. at 363) (internal quotation marks and brackets omitted). To determine whether Congress has abrogated Eleventh Amendment immunity with respect to a claim under Title II of the ADA, courts must apply a three-part test. *Id.* at 534–35 (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Finally, "[s]tates that receive federal funds waive their sovereign immunity defense to claims brought against them under the Rehabilitation Act." *Gean v. Hattaway*, 330 F.3d 758, 775 (6th Cir. 2003) (citing 42 U.S.C. § 2000d–7; *Nihiser v. Ohio EPA*, 269 F.3d 626 (6th Cir. 2001); *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (en banc)).

The LARA Defendants argue that Eleventh Amendment immunity bars most of Plaintiffs' claims against LARA and against Engle and Bushong in their official

capacities.  They do not argue that Eleventh Amendment immunity bars Plaintiffs'
claims under the ADA and the Rehabilitation Act.  Nor do they contest Plaintiffs'
argument that their claims against Engle and Bushong for prospective injunctive
relief may proceed under the *Ex Parte Young* doctrine.[6]

LARA is entitled to judgment on the pleadings, on the basis of Eleventh
Amendment immunity, on all of Plaintiffs' claims except their claims under the
ADA and the Rehabilitation Act.  Defendants Engle and Bushong are entitled to
the same with respect to Plaintiffs' claims for damages against them in their
official capacities.

### C.    Quasi-Judicial Immunity

Defendant Engle argues that she is immune to damages for her role in
summarily suspending Plaintiffs' licenses under the doctrine of quasi-judicial
immunity.[7]  Quasi-judicial immunity is a form of absolute immunity from damages
extended to "some officials who are not judges, but who 'perform functions closely
associated with the judicial process.'"  *Flying Dog Brewery, LLLP v. Michigan
Liquor Control Com'n*, 597 F. App'x 342, 348 (6th Cir. 2015) (quoting *Cleavinger*

---

[6] The LARA Defendants ask the Court to immediately enter an order denying
Plaintiffs injunctive relief.  The Court deems the request premature, since Plaintiffs
have yet to move for injunctive relief.

[7] Defendant Bushong claims quasi-judicial immunity as well.  As the Court
explained above, however, Plaintiffs have not pled facts plausibly supporting
Bushong's responsibility for the suspensions.

*v. Saxner*, 474 U.S. 193, 200–01 (1985)). The Sixth Circuit has stated that "determining whether a licensed doctor has violated the laws governing his or her practice of medicine and . . . imposing sanctions for any violations" is a "traditional adjudicatory function." *Lundeen v. State Medical Bd. of Ohio*, Nos. 12–3090, 12–3250, 2012 WL 10235344, at *4 (6th Cir. Oct. 17, 2012) (citing *Watts v. Burkhart*, 978 F.2d 269, 275 (6th Cir. 1992) (en banc); *Williams v. Mich. Bd. of Dentistry*, 39 F. App'x 147, 149 (6th Cir. 2002)). The applicability of quasi-judicial immunity is determined by considering this non-exhaustive list of factors:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Flying Dog*, 597 F. App'x at 348 (quoting *Cleavinger*, 474 U.S. at 202).

The first factor supports immunity. The Sixth Circuit has acknowledged a significant potential for vexatious lawsuits in the absence of immunity for officials who take disciplinary action against health professionals' licenses. *Quatkemeyer v. Kentucky Bd. of Medical Licensure*, 506 F. App'x 342, 348 (6th Cir. 2012); *see also Lundeen*, 2012 WL 10235344, at *4 (citing *Williams*, F. App'x at 149).

The second factor likely weighs against immunity, but its impact on the analysis is mitigated by the fact that summary suspension is only a temporary

expedient.   There are few procedural safeguards in the summary suspension

process, since each summary suspension is ordered without a hearing.  That said,

there is a statutory safeguard in the form of a mandate to consult with the chair of

the appropriate board or task force and to specifically find that the public health,

safety, or welfare requires emergency action.  Mich. Comp. L. §§ 333.16233(5),

24.292(2).  The Sixth Circuit has found support for immunity in similar

requirements established by Ohio and Tennessee's summary suspension statutes.

*See Lundeen*, 2012 WL 10235344, at *4 (citing Ohio Rev. Code § 4731.22(G));

*Watts*, 978 F.2d at 275–76 (citing Tenn. Code Ann. § 4–5–320(c)).  The Sixth

Circuit has also found support for immunity in post-suspension procedures that

mitigate the danger of abuse, including statutory requirements for the prompt

initiation of further proceedings after a summary suspension.  *See Lundeen*, 2012

WL 10235344, at *4 (citing Ohio Rev. Code § 4731.22(G)); *Watts*, 978 F.2d at

275–76 (citing Tenn. Code Ann. § 4–5–320(c)).  Here, Michigan law requires

LARA to immediately request an expedited hearing upon receiving a licensee's

petition to dissolve a summary suspension.  Mich. Admin. Code R. 792.10702(1).

The third factor appears to favor immunity.  Engle argues that she is

insulated from political influence because she is a civil service employee.

Plaintiffs point to no signs of political influence other than their allegation that

budgetary concerns motivated Engle to apply her alleged policy.  The Court does

not believe that the inevitable influence of financial constraints constitutes "political influence" within the meaning of the quasi-judicial immunity standards.

The fourth factor weighs against immunity because Engle, in making summary suspension decisions, does "not appear to be bound by any precedent typical of a legal inquiry." *Flying Dog*, 597 F. App'x at 351.

The fifth factor weighs against immunity. Although the process for contesting a summary suspension is adversarial, the process by which Engle decides to order a summary suspension is not. The Sixth Circuit has not, however, found the lack of adversarial process dispositive of the immunity question. In *Quatkemeyer*, Kentucky's Board of Medical Licensure conducted an investigation into the plaintiff's medical practice, issued an administrative complaint, and issued an emergency order restricting the plaintiff's access to controlled substances pending the conclusion of the administrative proceedings. 506 F. App'x at 344. The plaintiff's federal suit included a due process claim against the board for issuing the emergency order without a hearing. *Id.* The Sixth Circuit affirmed the dismissal of the plaintiff's claims, holding the board members entitled to quasi-judicial immunity. *Id.* at 346–39.

The sixth and final factor supports immunity. As mentioned above, the summary suspension order is subject to an expedited appeal. An ALJ must dissolve the summary suspension unless she finds that "sufficient evidence has

been produced to support a finding that the public health, safety, or welfare requires emergency action and a continuation of the suspension order." Mich. Admin. Code R. 792.10702(4). Erroneous suspension is therefore correctable.

After considering the balance of these factors, the Court concludes that Engle is entitled to quasi-judicial immunity from damages for her role in summarily suspending Plaintiffs' licenses. The Sixth Circuit has consistently applied quasi-judicial immunity in similar cases, evidently in recognition of the protections afforded by state procedures and the need to protect state officials charged with disciplining health professionals from threats of liability that may lead them to be lax in fulfilling their duties.

### D.    Qualified Immunity

Defendants Engle and Bushong claim qualified immunity. The Court declines to reach the issue, since the Court's conclusions on other issues mandate dismissal of all claims for damages against Engle and Bushong in their individual capacities.

### X.    *Younger* Abstention

The LARA Defendants argue that the Court should abstain from hearing the claims brought by Plaintiffs Lucas and Schultz under the doctrine of *Younger* abstention. "A district court may abstain under the *Younger* doctrine if three conditions exist: there are state proceedings that are (1) currently pending [as of the

date the plaintiff files his or her federal complaint]; (2) involve an important state interest; and (3) will provide the federal plaintiff with an adequate opportunity to raise his or her constitutional claims." *Nimer v. Litchfield Tp. Bd. of Trustees*, 707 F.3d 699, 701 (6th Cir. 2013) (citing *Habich v. Dearborn*, 331 F.3d 524, 530 (6th Cir. 2003)).

Plaintiffs filed their initial complaint in this suit on January 26, 2015. The LARA Defendants argue that state proceedings against Plaintiff Lucas were pending on that date because she remained subject to the Board of Nursing's disciplinary subcommittee's final order suspending her license. They argue that state proceedings against Plaintiff Schultz were pending on that date because she remained subject to a one-year term of probation imposed by a November 2014 consent order, which resolved the administrative complaint against her license. They cite no authority for the proposition that administrative proceedings remain pending for *Younger* purposes simply because an order, which brought the proceedings to a close, continues to have effects. The Court therefore concludes that the LARA Defendants have failed to establish the first requirement for *Younger* abstention.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Ulliance Defendants' Motion to Dismiss [19] is **DENIED** with respect to Plaintiffs' against Defendant Ulliance for breach of contract, and otherwise **GRANTED**.

**IT IS FURTHER ORDERED** that the LARA Defendants' Motion for Judgment on the Pleadings [38] is **DENIED** with respect to (1) Plaintiffs' procedural due process claim against Defendant Engle, to the extent permitted under the *Ex Parte Young* doctrine; (2) Plaintiffs' claim against Defendant LARA for breach of contract; and (3) Plaintiffs' claims under the ADA and Rehabilitation Act against Defendant LARA and against Defendant Engle in her official capacity. Their motion is otherwise **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: March 31, 2016                    Senior United States District Judge