## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Carol Lucas, RN, et al

      Plaintiffs,

v.

Ulliance, Inc., et al,

      Defendants.

Case No. 15-10337
District Judge: Arthur J. Tarnow
Magistrate Judge: R. Steven Whalen

| | |
|---|---|
| CHAPMAN LAW GROUP<br>Ronald W. Chapman (P37603)<br>Ronald W. Chapman, II (P73179)<br>Attorneys for Plaintiffs<br>1441 West Long Lake Road, Suite 310<br>Troy, Michigan  48098<br>(248) 644-6326<br>RChapman@ChapmanLawGroup.com<br>RWChapman@ChapmanLawGroup.com | HONIGMAN MILLER SCHWARTZ<br>& COHN LLP<br>Robert M. Jackson (P40723)<br>Mitra Jafary-Hariri (P74660)<br>Attorneys for Defendant Ulliance, Inc.<br>2290 First National Bldg.<br>660 Woodward Ave.<br>Detroit, MI 48226<br>(313) 465-7430<br>RJackson@Honigman.com<br>MJafary-Hariri@Honigman.com |
| MI DEPT. OF ATTORNEY GENERAL<br>PUBLIC EMPLOYMENT, ELECTIONS<br>& TORT DIVISION<br>John G. Fedynsky (P65232)<br>Thomas P. Clement (P61022)<br>Erik A. Grill (P64713)<br>Attorneys for State Defendants<br>525 W. Ottawa Street, P.O. Box 30736<br>Lansing, MI 48909 (517) 373-6434<br>FedynskyJ@Michigan.gov<br>ClementT@Michigan.gov<br>GrillE@Michigan.gov | |

## ULLIANCE'S INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Defendant Ulliance, Inc. ("Ulliance"), through its counsel Honigman Miller Schwartz and Cohn LLP, states the following as its Answer and Affirmative Defenses to the Second Amended Class Action Complaint filed by Plaintiffs in this action on May 4, 2015 (Docket No. 30).[1]

## I.  ANSWER

### Nature Of The Action

1.     Plaintiffs bring this action as a Class Action pursuant to Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who are, or were participants in the HPRP during the period from January 1, 2011 to present.

**ANSWER:**

No response is required to this Paragraph because it states legal conclusions. To the extent an answer is required, Ulliance denies the allegations of Paragraph 1.


2.     This action is necessary to protect the property rights of Plaintiffs and all others similarly situated which have been and will continue to be damaged due

---

[1] Pursuant to this Court's March 31, 2016 Order, all claims against Stephen Batchelor, Carolyn Batchelor, and Nikki Jones have been dismissed, as have all claims against Ulliance, Inc. except the claim asserted against Ulliance, Inc. in Count VI.  *See* Docket No. 62.  As a result, Ulliance, Inc. is responding to the surviving allegations against it.

to the arbitrary application of summary suspension procedures by the BHCS and HPRP, and other statutory and constitutional violations more fully detailed below.

**ANSWER:**

No response is required to this Paragraph because it states legal conclusions. To the extent an answer is required, Ulliance denies the allegations of Paragraph 2.

## Statement of Jurisdiction

3.      This action arises under the United States Constitution and under the laws of the United States Constitution; particularly under the Fifth and Fourteenth Amendments of the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, § 1983, § 1985 and § 1986 and the Americans With Disabilities Act 42 USC § 12101.

**ANSWER:**

Ulliance denies the allegations of Paragraph 3.

4.      This Court has jurisdiction under the provisions of 28 USC § 1331 and 1343(a)(3) and pendant jurisdiction over state claims which arise out of the nucleus of operative facts common to Plaintiffs' federal claims pursuant to 28 USC § 1367.

**ANSWER:**

No response is required to this Paragraph because it states legal conclusions. To the extent an answer is required, Ulliance denies the allegations of Paragraph 4.

5.     Plaintiffs bring suit against each and every Defendant in their individual and official capacities.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6.     Each and all of the acts of Defendants set forth were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the State of Michigan and United States, and by virtue of and under the authority of the Defendants' employment with the State of Michigan and MCL 333.16168 and 333.16167.

**ANSWER:**

Ulliance denies the allegations of Paragraph 6.

7.     Each Plaintiff and similarly situated class members, as a result of Defendants' unconstitutional policies, procedures, customs or practices faced actual injury; namely suspension of their license or forced medical care.

21430665.1

**ANSWER:**

Ulliance denies the allegations of Paragraph 7.

## Parties And Personal Jurisdiction

8.      Plaintiffs, Carol Lucas, RN, Tara Vialpando, RN, Scott Sanders, RN; and Kelly Ann Schultz, PA, are residents of the State of Michigan and are registered health care professionals in the State of Michigan.

**ANSWER:**

Ulliance, upon information and belief, admits that Tara Vialpando and Scott Sanders are licensed registered nurses in the State of Michigan and that Kelly Ann Schultz is a licensed physician's assistant in the State of Michigan.  In further answer, Ulliance states that Carol Lucas was formerly licensed as a registered nurse and, upon information and belief, Ms. Lucas's license is currently suspended. Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8.

9.      All named Defendants are, or were, residents of the State of Michigan and are, or were, employed either by the State of Michigan or HPRP, a Michigan Corporation, at the time of the alleged conduct. All acts alleged occurred in Michigan and thus personal jurisdiction is proper in Michigan.

21430665.1

**ANSWER:**

Ulliance admits that it is a Michigan corporation and it currently has a contract to assist in the administration of the Health Professional Recovery Program with the State of Michigan.  Ulliance incorporates fn. 1, above and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9.

10.    Plaintiff, Carol Lucas, RN, is a registered nurse in the State of Michigan and received a license suspension for failure to comply with HPRP despite the fact that two HPRP evaluators determined that she did not require treatment. Her license was subsequently suspended after refusing this forced medical treatment and will remain suspended until she subjects herself to this forced medical treatment or this Court grants injunctive relief.

**ANSWER:**

Ulliance incorporates the factual information set forth with regard to Plaintiff Carol Lucas in Ulliance's Supplemental Brief dated March 18, 2016, Docket No. 57, pp. 8-14, and the factual statements regarding Plaintiff Carol Lucas contained in the State Defendants' Supplemental Brief dated March 18, 2016, Docket No. 56, pp. 11-22.  Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.

21430665.1

11.    Plaintiff, Tara Vialpando, RN, is a registered nurse licensed in the State of Michigan who received a Summary Suspension after an anonymous and unverified tip was communicated to HPRP regarding Ms. Vialpando. Ms. Vialpando was informed during intake that she must refrain from taking pain medication prescribed by physicians who treated her for years by an evaluator who failed to consult her treating physicians. Ms. Vialpando's Summary Suspension was dissolved after a hearing and an Administrative Law Judge ("ALJ") recommended dismissal of her Administrative Complaint. ALJ, Andre Friedlis, noted in his opinion, "it is also troubling that an anonymous complaint could have caused the events that lead to an Administrative Complaint, Summary License Suspension, and an administrative hearing. At the very least HPRP should have investigated the complaint before requiring Respondent to prove her innocence."

**ANSWER:**

**[REDACTED UNDER SEAL]**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11.

12.    Plaintiff, Kelly Anne Schultz, PA, is a physician's assistant licensed to practice in the State of Michigan. Ms. Schultz was referred to HPRP after reporting a DUI she received to the State but was suspended for failing to contact HPRP after they sent a letter to the wrong address. HPRP refused to reopen her

case upon Ms. Schultz's request. Ms. Schultz's suspension was subsequently overturned by an ALJ.

**ANSWER:**

**[REDACTED UNDER SEAL]**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12.

13. Plaintiff, Scott Sanders, RN, was a registered nurse licensed to practice in Michigan who received a DUI after driving with a BAC of .09. Mr. Sanders was suspended one year after his original DUI for refusing to receive a third HPRP evaluation after two evaluators—one of which was HPRP approved— recommended that he didn't need treatment. In dismissing the complaint, the Court noted "It appears that Mr. Sanders, with some justification, was concerned that he would be required to enter into a multiple year Monitoring Agreement requiring attending meetings, counseling, and drag screens, **all at his expense without a clinical justification**."

**ANSWER:**

**[REDACTED UNDER SEAL]**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 13.

14.     Plaintiffs, Doe, are other similarly situated health care professionals, negatively impacted by the Defendants' broadly applied unconstitutional policies, procedures, callous and reckless conduct described herein.

**ANSWER:**

Ulliance denies the allegations of Paragraph 14.

15.     Defendant, LARA, is a Michigan "agency" as defined by MCL 691.1401 and is responsible for overseeing eight bureaus responsible for licensing various professions in the State of Michigan. The BHCS is one such bureau and is responsible for regulating licensed health care professionals in the State of Michigan under the Public Health Code. This Court has personal jurisdiction over Defendant, LARA, in Michigan.

**ANSWER:**

No response is required to this Paragraph because it states legal conclusions. To the extent an answer is required, Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16.     Defendant, Ulliance, Inc. d/b/a "HPRP," is a Michigan domestic profit corporation with its registered agent located at 901 Wilshire Dr., Suite 210, Troy, Michigan 48099; thus personal jurisdiction is proper in Michigan. HPRP was, at

9

times, employing one or more Defendants, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones to operate HPRP in the State of Michigan.

**ANSWER:**

Ulliance admits that it is a Michigan corporation with its registered agent located at 901 Wilshire Drive, Suite 210, Troy, Michigan 48099, it has a contract with the State of Michigan to assist it in the administration of the HPRP, and that it employs Carolyn Batchelor, Stephen Batchelor, and Nikki Jones. Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16.

17. Defendant, HPRP, is currently contracted with the State of Michigan to administer the contract for HPRP. HPRP operates as a separate section of Ulliance's overall operations. HPRP also contracts with employers to provide human resources assistance in the State of Michigan and specifically, assistance related to monitoring and treatment of substance abuse issues.

**ANSWER:**

Ulliance admits that it currently has a contract with the State of Michigan to assist the State of Michigan in the administration of the HPRP, and Ulliance has other business operations including to provide human resource and other assistance to employers. Ulliance does not provide diagnoses or treatment. Ulliance denies the remaining allegations of Paragraph 17.

21430665.1

18.     Defendant, Carole H. Engle, is the former Director of the BHCS under the LARA, a Michigan Agency, as defined by MCL 691.1407 and, on information and belief, is a resident of Michigan and an attorney licensed in the State of Michigan. Thus, personal jurisdiction is proper in Michigan. Defendant is being sued in her individual and official capacity.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18.

19.     Defendant, Carolyn Batchelor, is an employee of HPRP and the contract administrator for the HPRP contract who works and resides in Michigan. Thus, personal jurisdiction is proper in Michigan. Defendant is being sued in her individual and official capacity.

**ANSWER:**

No answer is required as to Paragraph 19 because this Court has dismissed all claims against Carolyn Batchelor.  *See* Docket No. 62.

20.     Defendant, Stephen Batchelor, is, or was, an employee of HPRP who works and resides in the State of Michigan and the current or former contract administrator for the HPRP contract and, on information and belief, is a resident of

Michigan. Thus, personal jurisdiction is proper in Michigan. Defendant is being sued in his individual and official capacity.

**ANSWER:**

No answer is required as to Paragraph 20 because this Court has dismissed all claims against Stephen Batchelor. *See* Docket No. 62.

21.    Defendant, Nikki Jones, LMSW, is a licensed social worker in the State of Michigan who works and resides in Michigan and is an employee of HPRP. Thus, personal jurisdiction is proper in Michigan. Defendant is being sued in her individual and official capacity.

**ANSWER:**

No answer is required as to Paragraph 21 because this Court has dismissed all claims against Nikki Jones. *See* Docket No. 62.

22.    Susan Bushong, is an employee of the State of Michigan, LARA, BHCS and is charged with overseeing the execution of the HPRP contract with Ulliance, Inc. Defendant is being sued in her individual and official capacity.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22.

21430665.1

23.     Defendants, Doe, are other HPRP employees and LARA employees who work and reside in Michigan and who undertook or carried out acts described herein, such as the application of arbitrary summary suspension procedures, unnecessary treatment of health care professionals, and disclosure of private health records, *inter alia*. Defendants are being sued in their individual and official capacities.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

## Common Allegations

24.     HPRP was established by the Michigan Legislature as a confidential, non-disciplinary approach to support recovery from substance use or mental health disorders.

**ANSWER:**

Ulliance admits that the "underlying philosophy" of the HPRP, as revealed by the HPRP Policy and Procedure Manual, Introduction, is to "protect the public while encouraging and supporting recovery from the treatable disease of substance abuse disorder and mental/emotional disorders."  In addition, the Manual reveals

21430665.1

that the HPRP is a "voluntary, confidential non-disciplinary program established by the legislature in 1993."  In further answer, Ulliance states that Section 101 of the Manual provides that:  "Under Section 333.16170a of the Michigan Public Health Code, the identity of an individual admitted into the HPRP and all records pertaining to the individual are confidential and not subject to disclosure under the Freedom of Information Act, discovery, or subpoena, unless the individual fails to satisfactorily participate in and complete the treatment plan as prescribed in the Monitoring Agreement. . . . When a healthcare professional comes to the attention of the HPRP and refuses to participate in the HPRP after all reasonable attempts have been made to encourage participation, the HPRP staff shall report the healthcare professional to the Allegation Section of the Department and forward all documents gathered in the intake process."  Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24.

25.    HPRP was designed to encourage impaired health care professionals to seek a recovery program before their impairment harms a patient or damages their careers through disciplinary action.

**ANSWER:**

Ulliance incorporates its answer to Paragraph 24, above and further states that HPRP is a program created by the Michigan legislature to help insure that

14

licensed health care professionals do not continue to suffer from mental health and substance abuse problems that might cause them to harm the public and HPRP provides a way in which an impaired health care professional can avoid disciplinary action through compliance with the HPRP policies and procedures. Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25.

26.     Unfortunately, a once well-meaning program, HPRP, has turned into a highly punitive and involuntary program where health care professionals are forced into extensive and unnecessary substance abuse/dependence treatment under the threat of the arbitrary application of pre-hearing deprivations (Summary Suspension) by LARA.

**ANSWER:**

Ulliance denies the allegations of Paragraph 26.


27.     HPRP was originally designed to simply monitor the treatment of health care professionals recommended by providers; however, HPRP has expanded its role to include making treatment decisions in place of the opinions of qualified providers.

**ANSWER:**

Ulliance denies the allegations of Paragraph 27.

21430665.1

28.     Plaintiffs and members of the class either suffer from a mental or physical impairment such as addiction to controlled substances or alcohol, or are erroneously regarded as such, and are thus a class of disabled persons as defined by 42 USC § 12101, *et seq*.

**ANSWER:**

Ulliance denies the allegations of Paragraph 28.

29.     HPRP, Carolyn Batchelor, Stephen Batchelor, Nikki Jones and Sue Bushong have created and applied unconstitutional policies and procedures which have the effect of denying licensees the due process of law, equal protection under the laws, and their constitutional right to bodily integrity. *See*, *Cruzan v Missouri Department of Health*, 497 U.S. 261 (1990), U.S. Const. amend. XIX.

**ANSWER:**

Ulliance denies the allegations of Paragraph 29.

30.     Specific examples of such policies include, but are not limited to:

        A.     Forcing licensees to undergo extensive and unnecessary treatment against the advice of licensed health care professionals;

16

B.     HPRP has a broad policy that monitoring agreements are either two to three years long depending on the diagnosis and contain the same treatment requirements;

C.     HPRP has a policy that HPRP selects the length and scope of treatment and not a qualified health care provider;

D.     HPRP has a policy that they unilaterally retain the power to extend a monitoring agreement, failure to adhere results in license suspension;

E.     HPRP engaged in arbitrary case closure despite pending review of appeals;

F.     HPRP forces licensees to see only providers that they pre-select and who are instructed to refrain from making treatment decisions regarding the type of treatment prescribed and the length of monitoring;

G.     HPRP and its case workers, namely Doe and Nikki Jones, used threats, false statements, and coercion, often threatening licensees with license suspension if they refuse to sign broad sweeping releases of information, subject themselves to unnecessary treatment, or delay signing a contract to seek the advice of counsel;

17

H.   HPRP has a policy of disclosing the private health data of licensees who have their cases involuntarily closed as "non-compliant";

I.   HPRP has a uniform policy licensees are restricted from working in certain jobs including home health care and not work more than a certain number of hours; and

J.   HPRP has a policy that prevents patients with chronic pain conditions from receiving adequate pain control by requesting prior approval of pain medication even if prescribed by a physician.

**ANSWER:**

Ulliance admits that it is required to and does comply with the provisions of the applicable Michigan statutes, the HPRP Policy and Procedure Manual, and its contract with State of Michigan.   Ulliance denies the remaining allegations contained in Paragraph 30.

31.   Licensees are subjected to intake evaluations by a pre-selected cadre of providers who profit from the enrollment of HPRP members by placement of licensees into their care. The evaluators are selected by Nikki Jones and Carolyn Batchelor based on their willingness to agree with HPRP's unethical practice restrictions.

18

21430665.1

**ANSWER:**

Ulliance denies the allegations of Paragraph 31.

32.     In exchange for the liberal application of diagnostic criteria for substance use disorder, evaluators are permitted to treat the licensees that they evaluate or they receive more referrals from HPRP. HPRP thereby creates a kickback scheme where providers are financially rewarded for referrals into HPRP.

**ANSWER:**

Ulliance denies the allegations of Paragraph 32.

33.     This is specifically seen in the relationship between Eastwood Clinics and HPRP where HPRP sends a significant number of licensees by referral to two evaluators, Bellah Shah, M.D. and Sabrina Mitchell, LMSW, who misapply the diagnostic criteria for substance use disorder in exchange for increased referrals from HPRP.

**ANSWER:**

Ulliance admits that Dr. Bella Shah and Sabrina Mitchell, LMSW are HPRP-approved providers.  Ulliance denies the remaining allegations of Paragraph 33.

34.     HPRP, Nikki Jones and Carolyn Bachelor exclude providers from HPRP who adhered to proper diagnostic criteria and refuse to relax their diagnostic criteria to include more licensees in the monitoring program.

**ANSWER:**

Ulliance denies the allegations of Paragraph 34.


35.     HPRP, Nikki Jones and Carolyn Batchelor, threaten providers with disenrollment from the program if they don't adhere to HPRP's relaxed diagnostic criteria or determine that a licensee does not require treatment.

**ANSWER:**

Ulliance denies the allegations of Paragraph 35.


36.     Carolyn Batchelor engaged in witness intimidation in violation of Plaintiffs' constitutional rights and 42 USC § 1985, U.S. Const. Amend. V and XIV. Immediately following a Summary Suspension hearing for Plaintiff Kellie Schultz, PA, Carolyn Batchelor contacted Martha Harrell, LMSW, and threated to disenroll her as an HPRP provider if she completed her testimony and testified at an additional hearing. Subsequently, Martha Harrell, LMSW, refused to complete her testimony on behalf of Plaintiff.

21430665.1

**ANSWER:**

Ulliance denies the allegations of Paragraph 36.

37.     HPRP, Nikki Jones, Carolyn Batchelor, and Stephen Batchelor, created a policy that providers are precluded from determining the length of a monitoring agreement and are restricted from making final treatment decisions regarding a licensee's treatment.

**ANSWER:**

Ulliance denies the allegations of Paragraph 37.

38.     HPRP, Nikki Jones, Carolyn Batchelor, and Stephen Batchelor have a policy that HPRP and its employees make the final decision regarding the length and conditions of a monitoring agreement including conditions. The treatment for a licensee is determined at a "TEAM" meeting where HPRP's policy makers, including Carolyn Batchelor and Nikki Jones, make treatment decisions.

**ANSWER:**

Ulliance admits that its employees review the evaluations received from the HPRP-approved evaluators and all of the other information made available to them regarding the licensees and, in accordance with the applicable Michigan statutes, the HPRP Policy and Procedure Manual, and the contract with the State of

21430665.1

Michigan, prepare an appropriate monitoring agreement for each particular licensee based on the facts and circumstances regarding each particular licensee. Ulliance denies the remaining allegations of Paragraph 38.

39.    While HPRP induces participants to cooperate under the guise of confidentiality, HPRP, Nikki Jones, Carolyn Batchelor, and Stephen Batchelor, require that HPRP participants sign broad releases releasing their "confidential" treatment records to LARA, their employers, and the Attorney General's office as a condition of entry. Refusal to sign the aforementioned releases results in case closure and the arbitrary application of summary suspension procedures. Further, regardless of whether or not a release is signed, HPRP, Carolyn Batchelor, and Nikki Jones will release "confidential" treatment records to LARA and the Attorney General's Office for use in disciplinary proceedings against a licensee in violation of 42 USC § 290dd-2.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 24 and 38, above and denies the remaining allegations of Paragraph 39.


40.    This process culminates in a large number of health care professionals receiving a "Monitoring Agreement" which is essentially a non-negotiable contract for treatment selected by HPRP.

21430665.1

**ANSWER:**

Ulliance denies the allegations of Paragraph 40.

41.     Any attempt at negotiating the agreement is met with case closure by HPRP and arbitrary license suspension by LARA.

**ANSWER:**

Ulliance denies the allegations of Paragraph 41.

42.     While HPRP's contract with the State requires that treatment be selected by an approved provider and that it be tailored in scope and length to meet the individual licensee's needs, licensees receive the same across-the-board treatment mandates regardless of their diagnosis or condition.

**ANSWER:**

Ulliance denies the allegations of Paragraph 42.

43.     Failure to "voluntarily" submit to unnecessary and costly HPRP treatment results in automatic summary suspension of their license to practice in their chosen health profession by Defendants LARA, Engle, and Bushong without a pre-deprivation hearing. This decision is made regardless of the extent of a

licensee's perceived disability and without an investigation as required under the Public Health Code.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43.

44.     Facing the threat of summary suspension in the event of non-compliance, licensed health care professionals are induced into a contract as a punitive tool of BHCS and are often required to refrain from working without prior approval, refrain from taking prescription drugs prescribed by treating physicians, and sign broad waivers allowing HPRP to disclose their private health information to employers, the State of Michigan, and/or treating physicians.

**ANSWER:**

Ulliance denies the allegations of Paragraph 44.

45.     Also, failure to sign an HPRP contract within forty-five (45) days of first contact results in automatic case closure, even if a licensee is requesting appeal of a decision to be included in an HPRP contract. Case closure always results in summary suspension of the licensee's license by the BHCS.

21430665.1

**ANSWER:**

Ulliance denies the allegations of Paragraph 45.

46.    Once a licensee is summarily suspended, HPRP sends all of the licensee's private health data (treatment records, psychotherapy notes, etc.) to the State for use in administrative procedures against them despite the mandate that this program is voluntary and confidential. This is a clear violation of 42 USC § 290dd-2 which prohibits the disclosure of treatment records related to substance abuse treatment.

**ANSWER:**

Ulliance incorporates its answer to Paragraph 24, above and admits that it complies with the requirements of the applicable Michigan statutes (including MCL §333.16170a), the HPRP Policy and Procedure Manual (including Section 101), and the contract with the State of Michigan regarding the confidentiality of the documents regarding HPRP participants.   Ulliance denies the remaining allegations of Paragraph 46.

47.    Every licensee in the State of Michigan who has received a summary suspension, as a result of HPRP non-compliance, has had their private health data

25

21430665.1

transmitted to the BHCS for use during administrative proceedings in violation of 42 USC § 290dd-2.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 24 and 46, above and denies the remaining allegations of Paragraph 47.

48.    At summary suspension hearings, HPRP, Carolyn Batchelor, Nikki Jones, and Stephen Batchelor have a policy that only pre-selected "testifiers" are permitted to testify at a hearing. These "testifiers" are trained on how to testify and prevent judicial scrutiny of HPRP's unconstitutional practices. These "testifiers" are rewarded with extra pay for testifying. This policy is also designed to prevent meaningful confrontation of the witnesses and to obfuscate the truth behind HPRP unconstitutional policies and procedures.

**ANSWER:**

Ulliance denies the allegations of Paragraph 48.

49.    LARA, in cooperation with HPRP, only permits these "testifiers" to present testimony regarding a licensee's involvement with HPRP. Further, LARA, in every summary suspension hearing admits the entire "confidential" HPRP case

21430665.1

file, including treatment records, into evidence to support their arbitrary application of pre-deprivation hearing against a licensee. This is in direct contravention of 42 USC § 290dd-2.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49.

50.   The mandatory requirements of HPRP, coupled with the threat of summary suspension, makes involvement in HPRP an involuntary program circumventing the due process rights of licensees referred to the program. The involuntary nature of HPRP policies and procedures as outlined above and the unanimous application of suspension procedures upon HPRP case closure are clear violations of Procedural Due Process under the Fourteenth Amendment. U.S. Const. amend. V and XIV.

**ANSWER:**

Ulliance denies the allegations of Paragraph 50.

51.   Plaintiffs, Carol Lucas, RN; Tara Vialpando, RN; Scott Sanders, RN; and Kelly Ann Schultz, P A, are four such examples of the hundreds, and potentially thousands, of licensed health care professionals injured by the arbitrary

21430665.1

application of summary suspension procedures by the BHCS and HPRP. Each named Plaintiff suffered arbitrary license suspension by the BHCS as a result of their desire to not enter the voluntary treatment offered by HPRP.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51.

52.     In each case, the LARA, BHCS required suspension of every licensee who did not comply with HPRP's draconian and unconstitutional policies, customs, and practices.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52.

53.     In each case, the suspension was promptly overturned by an ALJ after the opportunity for a hearing.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53.

21430665.1

54.    In each case, the State did not produce information that a board member or its designee reviewed the case and independently exercised judgment that summary suspension proceedings should ensue.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54.

55.    In each case, licensees had their private health data from "voluntary" and "confidential" involvement with HPRP disclosed by HPRP at a subsequent administrative hearing.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55.

56.    Defendants Nikki Jones and Carolyn Batchelor demanded that Plaintiff, Carol Lucas, RN, submit to treatment despite the recommendation by three providers (two HPRP providers and her therapist) that Plaintiff did not require treatment. Plaintiff's case was subsequently closed after she refused to submit to the unnecessary and arbitrary treatment and her license remains

suspended by LARA and Carole Engle because she refuses to submit to unnecessary medical treatment.

**ANSWER:**

Ulliance incorporates the factual information set forth with regard to Plaintiff Carol Lucas in Ulliance's Supplemental Brief dated March 18, 2016, Docket No. 57, pp. 8-14, and the factual statements regarding Plaintiff Carol Lucas contained in the State Defendants' Supplemental Brief dated March 18, 2016, Docket No. 56, pp. 11-22. Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 56.

57.    Carolyn Batchelor and Sue Bushong closed Plaintiff Kellie Schultz's case file after sending a letter requesting her cooperation with the program to the wrong address. LARA and Carole Engle subsequently suspended her license despite the fact that two evaluators determine that Ms. Schultz was safe to practice and did not require treatment. While the summary suspension was subsequently dissolved by the ALJ, Ms. Schultz was suspended from her job, lost temporary billing privileges with Center for Medicare Services ("CMS"), appeared on the Office of the Inspector General ("OIG") exclusion list and faced other professional embarrassment.

**ANSWER:**

**[REDACTED UNDER SEAL]**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 57.

58.     Plaintiff, Tara Vialpando, RN, had her case closed by Defendants Nikki Jones, Carolyn Batchelor, and Susan Bushong, after refusing an HPRP provider's request that she cease taking medication prescribed by her treating physicians for a range of long standing medical issues. The HPRP provider did not consult with her treating physicians. Ms. Vialpando's case was closed when she refused to submit to the aforementioned treatment and she was subsequently suspended by Carole Engle and LARA. The suspension was promptly overturned by an ALJ, and at a second hearing regarding the administrative complaint the ALJ determined that Ms. Vialpando did not suffer from an impairment.

**ANSWER:**

**[REDACTED UNDER SEAL]**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 58.

59.     Plaintiff, Scott Sanders, RN's HPRP case was closed by Nikki Jones, Carolyn Batchelor, and Susan Bushong after he refused to enter into and HPRP

monitoring agreement after two qualified providers determined that he did not meet the criteria for substance abuse treatment. Despite this, HPRP, Carolyn Batchelor, and Nikki Jones, determined he needed treatment and required that he enter into a monitoring agreement. Carole Engle and LARA summarily suspended Mr. Sanders' license after he rightfully refused. Mr. Sanders' summary suspension was subsequently dissolved and at a second hearing on the Administrative Complaint, the ALJ determined that he did not suffer from an impairment.

**ANSWER:**

**[REDACTED UNDER SEAL]**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 59.

60.    In each case described above, LARA, Carole Engle, and Susan Bushong, applied their policy that HPRP case closure always results in license suspension without authorizing an investigation, determining if the licensee is actually a threat, or reviewing the particular facts of a licensee's case.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60.

32

61.     HPRP was a punitive tool wielded by LARA, Carole Engle, HPRP and its employees in order to circumvent due process, increase its budget through providing unnecessary treatment, and increase its power over substance abuse treatment programs in Michigan at the hands of hard working health care professionals.

**ANSWER:**

Ulliance denies the allegations of Paragraph 61.

62.     At all times, each Defendant was operating under color of state law, namely MCL 333.16168, MCL 333.16233 and 333.16167 which authorizes LARA to contract with a company to administer the HPRP contract. At all times, each Defendant was either an employee of the State of Michigan or employed by HPRP, and therefore an agent of the State of Michigan operating under the statute that authorizes HPRP.

**ANSWER:**

Ulliance denies the allegations of Paragraph 62.

63.     The actions described above constitute a conspiracy between HPRP and LARA in that LARA ratifies the unconstitutional policies and demands of HPRP by immediately suspending the license of a licensee in the event of HPRP

noncompliance without an investigation. Suspension results in an administrative complaint and resolution of such a complaint is only achieved by consent to monitoring by HPRP. Thus, pre-hearing deprivation is used as a punitive tool by defendants to enforce compliance with HPRP's demands not as a means to protect the public health safety and welfare.

**ANSWER:**

Ulliance denies the allegations of Paragraph 63.


## Class Action Allegations

64.     Plaintiffs bring this action as a Class Action, pursuant to Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the named Plaintiffs, Doe health care professionals and all persons who are, or were participants in the HPRP during the period from January 1,2011 to present.


**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

65.     Plaintiffs also bring this action on behalf of a sub-class of health care professionals who received summary suspension of their license between January 1, 2011 and the present, as a result of the application of the unconstitutional practices alleged herein.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

66.     The Class consists of thousands of persons located throughout the United States, thus, joinder of all Class Members is impracticable. For example, between March 2013 and September 2013, HPRP had approximately eight hundred and eight (808) new participants, of which only thirty six (36) were assessed as not eligible for the program. During that same time period, one-hundred and ninety two (192) participants had their case closed as non-compliant.

**ANSWER:**

Ulliance denies the allegations of Paragraph 66.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

21430665.1

67.    The exact number of Class Members is not presently known to Plaintiffs, but can readily be determined by appropriate discovery and access to HPRP quarterly and monthly reports.

**ANSWER:**

Ulliance denies the allegations of Paragraph 67.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

68.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in 42 USC § 1983 litigation and in professional licensing. Plaintiffs' counsel is uniquely qualified to handle the complexities of 42 USC § 1983 litigation as well as the administrative law issues arising out of the cause of action. Chapman Law Group currently represents or has represented a significant number of potential Class Members and represented the named Plaintiffs during their respective licensing proceedings.

**ANSWER:**

Ulliance denies the allegations of Paragraph 68.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

69.     Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

**ANSWER:**

Ulliance denies the allegations of Paragraph 69.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

70.     Each Class Member was injured in that, among other things, pre-deprivation review was not completed as a result of the arbitrary application of a policy, custom or practice that every licensee who does not elect to enter HPRP will be summarily suspended. Class Members were deprived of a constitutionally protected right to due process and subjected to unnecessary treatment at their own expense. Because of the commonality of the injuries and the readily identifiable nature of the Class, as well as the common grievances of the Class, a Class Action is superior to other available methods for the fair and efficient adjudication of this controversy.

21430665.1

**ANSWER:**

Ulliance denies the allegations of Paragraph 70.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

71.    Because the damages suffered by some of the individual Class Members may be relatively small when compared to the expense of Federal Civil Rights litigation, the expense and burden of individual litigation make it virtually impossible for the Class Members to individually seek redress for the wrongful conduct alleged herein.

**ANSWER:**

Ulliance denies the allegations of Paragraph 71.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

72.    The Class contains possibly thousands of similarly situated individuals. Suit by each potential member of the Class would unnecessarily burden the Court and individually prejudice Class Members and Defendants themselves. Class certification is the superior device for adjudication for all parties involved.

21430665.1

**ANSWER:**

Ulliance denies the allegations of Paragraph 72.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

73.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class because the issues are fundamentally related to HPRP and BHCS general policies, customs, and practices; not the individual application of that policy, custom, or practice.

**ANSWER:**

Ulliance denies the allegations of Paragraph 73.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

74.    Pursuant to Rule 23(b)(2), through their unconstitutional policies and procedures, the Defendants have refused to act on grounds that apply generally to the class and the Class seeks injunctive or declaratory relief as well as monetary relief.

**ANSWER:**

Ulliance denies the allegations of Paragraph 74.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

75.     Final injunctive relief is appropriate respecting the class as a whole.

**ANSWER:**

Ulliance denies the allegations of Paragraph 75.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

76.     Among the questions of law and fact common to the Class are:

A.     Did the Defendants' involuntary treatment mandates, unconstitutional policies and procedures (more fully detailed above) and arbitrary application of summary suspension procedures, amount to a procedural and substantive due process violation, in violation of 42 USC § 1983?

B.     Did Defendants' unconstitutional actions, unconstitutional customs, policies and procedures more fully detailed above, as broadly applied to the class, amount to denial of Plaintiffs' Equal Protection Rights under the Fourteenth Amendment?

C.    Did Defendants' unconstitutional actions and unconstitutional customs, policies and procedures more fully detailed above, as broadly applied to the class, amount to violations of the right to choose their health care, their statutorily afforded rights pursuant to the Americans With Disabilities Act Pub. L. 101-336 ("ADA"), particularly title II, section 504 of the Rehabilitation Act of 1973, as amended (29 USC § 794) ("Section 504")?

D.    Did Defendants' unconstitutional actions and customs, policies, and procedures as outlined above which were broadly applied to the class, amount to breach of Defendant HPRP's contract with the State of Michigan and cause injury to the class as a whole?

**ANSWER:**

Ulliance denies the allegations of Paragraph 76.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

77.    Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

41

**ANSWER:**

Ulliance denies the allegations of Paragraph 77. In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

**Class Action Allegations**

**Count I**
**42 USC § 1983 Procedural Due Process Deprivations**
**By Lara, Carole Engle, Susan Bushong, And Doe**

78.    Plaintiffs herein re-allege Paragraphs one (1) through seventy seven (77) of this Complaint as if fully stated herein.

**ANSWER:**

Ulliance incorporates Paragraphs 1 through 77, above.

79.    On September 1, 2012, Ulliance, Inc. ("HPRP") entered into a contract with the State of Michigan as the corporation responsible for administering HPRP. (**Exhibit A**).

**ANSWER:**

Ulliance admits that, effective September 1, 2012, it entered into a contract with the State of Michigan to assist the State of Michigan with the administration of the HPRP. Ulliance denies the remaining allegations of Paragraph 79.

80.    The aforementioned contract is set to expire in August 2015.

**ANSWER:**

Ulliance admits that its contract with the State of Michigan to assist in the administration of the HPRP has been extended, through August 31, 2016.

81.     Under the terms of said contract, HPRP is required to undertake certain tasks in the administration of the HPRP contract on behalf of the State of Michigan as established by Public Act 80 of 1993.

**ANSWER:**

Ulliance admits that it is required to comply with the provisions of its contract with the State of Michigan to assist with the administration of the HPRP. Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 81.

82.     At all times relevant, pursuant to the Fifth and Fourteenth Amendments of the United States Constitution, Plaintiffs and Class Members had a right to procedural due process prior to deprivation of their property rights, to wit: suspension of their license by HPRP and BHCS. *Matthews v Eldridge*, 424 U.S. 319 (1976).

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

83.    The actions, inactions, and customs, policies and procedures created and followed by all Defendants as outlined above were violations of clearly established statutory and constitutional rights to wit: pre-deprivation investigation, pre-deprivation hearing, and evaluation of each case on a case-by-case basis pursuant to the laws of the State of Michigan, namely MCL 333.16233(5) and the Fifth and Fourteenth Amendments.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

84.    Defendant, LARA, Carole Engle, Susan Bushong, and Doe (employees of LARA) had a broad policy that required Summary Suspension in the event that a licensee's HPRP case was closed—regardless of the reason.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

85. In furtherance of this broad unconstitutional policy, Defendants LARA, Carole Engle, and Doe, failed to follow clearly established law requiring that they "incorporate" findings indicating that a licensee is an imminent threat to the public health safety and welfare in to the Order of Summary Suspension as required by MCL 24.292 and thereby depriving Plaintiffs of statutorily required notice of the allegations. Defendants LARA, Carole Engle, and Doe's Summary Suspension Orders—in every case—fail to state why emergency action is required to protect the public health, safety and welfare.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

86. Without investigation and a factual review by a board member or his or her designee, and a specific finding as to the necessity of Summary Suspension,

the risk of erroneous deprivation is high. Further, the deprivation is based off of administrative "case closure" by HPRP and is not supported by a particular reason for case closure but instead a broadly applied policy circumventing due process.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

87.     Upon post-deprivation review, a statistically significant percentage of summary suspensions are "dissolved" after review by the ALJ, indicating clear evidence of the failed policy and deliberate ignorance by Defendants that summary suspensions are callously and recklessly issued without a clear basis for pre-hearing deprivation.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

88.     Defendants LARA and Doe, through the actions of Carol Engle, knew that this policy or procedure was a violation of clearly established State and

21430665.1

Federal Statues (namely MCL 24.292, 42 USC § 1983) and the Fourteenth Amendment, which lead to a substantial number of erroneous "deprivations" given failure to perform an investigation and the statistical number of overturned Orders of Summary Suspension. Defendants continued to implement this policy in the face of said statistics, thereby arbitrarily and with evil motive, a reckless and callous indifference to the federally protected rights of Plaintiffs, deprived a substantial number of health care professionals' due process. *See*, *Matthews v Eldridge*, 424 U.S. 319 (1976).

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

89.    Through Defendants' callous and reckless application of a broad policy of suspension, LARA, Carole Engle, Susan Bushong, and Doe deprived hundreds and possibly thousands of licensed health care professionals' due process and subjected them to substantial damages including loss of income, loss of employment, and professional embarrassment.

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

90.     Any reasonable person would understand that a broad policy denying case-by-case review of a licensee's file to determine if they are a danger to the public is a violation of constitutional rights; namely, due process under the Fourteenth Amendment.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

91.     The motive behind this broad policy was to reduce LARA's budget for investigations of licensed health professionals by removing the need for case-by-case investigation of the State's need for pre-hearing deprivation.

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

92.     The fiscal burdens of statutorily required board review and investigation are *de minimis* and is not so time consuming or expensive as to justify a broad policy that all licensees whose cases are closed by HPRP require summary suspension.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

93.     By the arbitrary application of such a policy that prevents case-by-case review of each licensee's case to determine if "the public health, safety, or welfare requires emergency action" prior to the initiation of summary suspension proceedings in accordance with MCL 333.16233(5), Defendants LARA, Carole Engle, Susan Bushong, and Doe were not preforming a judicial, prosecutorial, or legislative function and are not entitled to absolute immunity.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

94.    Wherefore, Plaintiffs requests the following relief:

    A.    Compensatory and punitive damages;

    B.    Attorney fees and expenses;

    C.    Any and all other damages otherwise recoverable under 42 USC §§ 1983 and 1988; and

    D.    A permanent injunction preventing Defendants from:

    E.    Suspending the license of a health care professional governed under the Public Health Code without the express written approval by the chair of the appropriate board or task force or his or her designee, and the specific justification for emergency deprivation as required by MCL 333.16233(5); and

    F.    Upholding any summary suspension levied as a result of the unconstitutional policies as described above, and immediate reinstatement of said licensees pending a pre-deprivation hearing.

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.


## Count II
## 42 USC § 1983 Procedural Due Process Deprivations By All Defendants

95.     Plaintiffs hereby re-allege paragraphs one (1) through ninety four (94) of this Complaint as if fully stated herein.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 1 through 94, above.

96.     HPRP and Defendants, Carolyn Batchelor, Stephen Batchelor, Nikki Jones, Susan Bushong, and Doe, engaged in various actions designed to increase the broad power of HPRP beyond its statutory boundaries, increase its budget, and gain power of Michigan substance abuse treatment by unilateral action or creating the aforementioned customs, practices, policies or procedures designed to arbitrarily increase the number of HPRP participants and subject participants to extensive, unnecessary, and involuntary treatment.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

97.     The policies outlined above constitute deprivations under the Due Process Clause and the Fourteenth Amendment because licensees were subject to, among other things, job loss or suspension, forced medical care, forced deprivation of prescription medications, and denial of necessary medical care and thus were deprived of their fundamental right to bodily integrity under the threat of license suspension.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

98.     The conduct of each Defendant deprived each Plaintiff and Class Member of the rights secured under the Fourteenth Amendment and were denied Procedural Due Process by being subjected to the aforementioned unconstitutional

policies, procedures, and actions without Due Process of Law and under the threat of Summary Suspension. *See*, U.S. Const. Amend. V and XIV.

**<u>ANSWER</u>:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

99.    Defendants HPRP, Carolyn Batchelor, Stephen Batchelor, Susan Bushong, Nikki Jones, and Doe (HPRP employees) were personally involved in creating, implementing and carrying out the above mentioned unconstitutional practices.

**<u>ANSWER</u>:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

100.   After initial evaluation and intake, each HPRP case is "teamed" where Carolyn Batchelor, Nikki Jones, and Doe (HPRP employees) view the diagnosis offered by the evaluator and dictate a specific course of treatment for each licensee.

This is a violation of the HPRP empowering statutes, amounts to the corporate practice of medicine and is outside the standard of care.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

101.  In each case, HPRP, Carolyn Batchelor, Nikki Jones, and Doe determine the treatment and create a monitoring agreement.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

102.  This includes specifically selecting the treatment providers that the licensees are required to receive treatment from, determining the length of contract, and determining the scope of treatment.

**ANSWER:**

21430665.1

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

103.   HPRP also retains authority to arbitrarily instruct licensee's to refrain from working and to refrain from working in certain jobs.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

104.   Failure to follow HPRP's recommendations results in immediate case closure and license suspension. Ratification of HPRP's arbitrary demands that certain licensees refrain from working, or only work certain jobs, through the use of summary suspension procedures are an improper delegation of summary suspension authority by LARA, Carole Engle, and Susan Bushong.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

105.   Defendants' policies outlined above, namely the HPRP defendants' arbitrary denial of health care, forced medical care, disclosure of confidential records and restrictions on the practice of a health profession, without due process of law, as ratified by LARA, Engle and Doe's use of summary suspension procedures, amounts to a violation of the Fifth and Fourteenth Amendment guarantees of procedural due process.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


106.   As a direct and proximate result of willful, wanton, reckless, and callous conduct and omissions of each Defendant, individually, and as agents of the State of Michigan, named Plaintiffs and members of the Class suffered loss of life (proper health care), liberty, and property, together with significant financial harm, emotional distress, mental anguish, attorney fees and costs of litigation, and deprivation of their license.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.


107. Defendants are not entitled to Eleventh Amendment immunity pursuant to MCL 691.1407 because the acts described above constitute gross negligence that is the proximate cause of Plaintiffs injury and damages and Defendants were "providing medical care or treatment to a patient." MCL 691.1407. Moreover, Defendants' conduct, as outlined herein, is so reckless as to demonstrate a substantial lack of concern for whether an injury results.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.


108. Wherefore, Plaintiff requests the following relief:

    A. Compensatory and punitive damages;

    B. Attorney fees and expenses:

21430665.1

C.    Any and all other damages otherwise recoverable under 42 USC §§ 1983 and 1988; and

D.    A permanent injunction preventing Defendants from:

a.    Making treatment decisions regarding the care of licensees participating in HPRP;

b.    Further breaching the September 1, 2012 contract with the State of Michigan; (**Exhibit A**) and

c.    Restricting the access to medical care of licensees referred to HPRP.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

**Count III**
**42 USC § 1983 Substantive Due Process Deprivations By All Defendants**

109.   Plaintiffs hereby re-allege paragraphs one (1) through one hundred and nine (109) of this Complaint as if fully stated herein.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 1 through 108, above.

21430665.1

110.   Plaintiffs, and similarly situated Class Members, have a fundamental right to choose their own health care, pursuant to the Fourteenth Amendment, and a fundamental right to refuse medical treatment, both of which involve a right to bodily integrity. *Roe v Wade*, 410 U.S. 113, 155, 93 S. Ct 705, 728 (U.S. 1973); *see also*, *Cruzan v Missouri Department of Health*, 497 U.S. 261 (1990).

**<u>ANSWER:</u>**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

111.   The Fourteenth Amendment forbids the government to infringe fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v Flores*, 507 U.S. 292, 302 (1993).

**<u>ANSWER:</u>**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

21430665.1

112.   All Defendants, including the HPRP Defendants and the LARA defendants, banded together through the use of the unconstitutional policies and actions described above for the purpose of discriminating against licensees with a disability, or a perceived disability, in order to arbitrarily increase HPRP participation, power over the substance abuse treatment programs in the State of Michigan and to increase their budget and State funding.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


113.   Defendants, as a result of the aforementioned unconstitutional policies requiring summary suspension for HPRP non-compliance, forced Plaintiffs and the Class to undergo involuntary medical treatment under the threat of license suspension without the benefit of a pre-deprivation hearing.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

114.   Under the threat of deprivation of their license to practice, significant legal expenses, job loss, and the public humiliation of a formal Administrative Complaint, Plaintiffs and the class were forced to enter into treatment with HPRP, involuntarily.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


115.   The forced medical care, denial of medical care, broad monitoring agreements, broad restrictions on practice, blanket policies prohibiting some professionals from working certain jobs, and corporate practice of medicine was not narrowly tailored to achieve a compelling government interest. The State does not have a compelling interest in forcing particular medical care upon its Citizens under the threat of deprivation of life, liberty, and property without due process of law.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

116.   Licensees were forced to choose between forced medical care and their license. The use of pre-hearing deprivation procedures in every case of HPRP noncompliance was not narrowly tailored to achieve a compelling government interest.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


117.   Furthermore, Defendants' actions requiring standard broad treatment requirements without regard to an individual's need for treatment is not narrowly tailored to serve a compelling government interest. In addition, Defendants' arbitrary use of summary suspension procedures, without investigation and regard to whether a licensee is actually a threat to the public health safety and welfare, is not narrowly tailored to serve a compelling government interest.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

118.   At all times relevant, the Defendants were acting under the color of law, namely MCL 333.16168, MCL 333.16233 and 333.16167.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

119.   Defendants' policies, procedures, and actions that require forced medical care of health care professionals by the State shocks the conscious. Further, forced health care decisions are a substantial departure from accepted professional judgment, practice or standards of health care professionals.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

120.   Defendants' conduct amounts to direct violations of the fundamental right to bodily integrity and the right to choose medical treatment.

**ANSWER:**

21430665.1

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

121.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class were forced to, among other things, undergo unnecessary medical treatment; accept treatment by a small cadre of physicians assigned by HPRP; accept treatment decisions made by HPRP; incur significant personal expense; accept medical care against the advice of their private physicians; and endure unnecessary care against the advice of their private physicians.

**<u>ANSWER:</u>**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

122.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class suffered, job loss, public humiliation, forced medical care at significant expense, pain and suffering, loss of income, legal expenses, etc.

**<u>ANSWER:</u>**

21430665.1

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

123.   Wherefore, Plaintiffs and all other similarly situated individuals request the following relief:

A.   Compensatory and punitive damages;

B.   Attorney fees and expenses;

C.   Any and all other damages otherwise recoverable under 42 USC §§1983 and 1988; and

D.   A permanent injunction preventing Defendants from:

a.   Subjecting licensed health care professionals to forced medical treatment in violation of their Fundamental Rights;

b.   Making treatment decisions regarding the care of licensees participating in HPRP;

c.   Further breaching the September 1, 2012 contract with the State of Michigan; (**Exhibit A**)

d.   Suspending the license of a health care professional governed under the Public Health Code without the

21430665.1

express written approval by the chair of the appropriate board or task force or his or her designee, and the specific justification for emergency deprivation as required by MCL 333.16233(5) after an investigation conducted pursuant to the Public Health Code; and

e.   Upholding any summary suspension levied as a result of the unconstitutional policies as described above, and immediate reinstatement of said licensees pending a pre-deprivation hearing.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

**Count IV**
**Conspiracy To Interfere With Civil Rights In**
**Violation Of 42 USC § 1985 By All Defendants**

124.   Plaintiffs fully incorporate and adopt paragraphs one (1) through one hundred twenty two (122) of this Complaint as if fully stated herein.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 1 through 123, above.

66

125.   At all times relevant, Plaintiff and the Class of similarly situated health care professionals had a fundamental right to, among other things, their professional licenses, adequate healthcare, to choose their health care, and to privacy of their health data. All named Defendants acted in concert to deprive Plaintiffs and the Class of their fundamental right to health care to wit: HPRP exceeded its authorization under its empowering statutes and violated their contract, in turn LARA developed a policy of arbitrary suspension when licensees refused to comply with HPRP's unconstitutional demands, as a result of license suspension was used as a punitive tool to enforce compliance with HPRP's unconstitutional demands.

**<u>ANSWER</u>:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


126.   Plaintiffs, and the Class are "disabled persons" as defined by 42 USC § 12102, or those erroneously regarded as such, because 42 USC § 12102 extends to individuals who are in recovery for the use of illegal drugs or alcohol or are erroneously regarded as having an addiction to illegal drugs or alcohol pursuant to 42 USC §12114(b).

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

127.   Each Plaintiff and member of the sub-class of individuals received summary suspension as a result of HPRP non-compliance for refusing to accept unnecessary treatment, unconstitutional treatment, and the arbitrary treatment decisions of Defendants. Plaintiffs constitute a class of individuals retaliated against for enforcing their fundamental rights, the right to bodily integrity and the right to choose their own health care.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

128.   As a result of Defendants' conduct to wit: the unconstitutional policies and procedures enacted by HPRP, the unconstitutional application of the HPRP empowering statutes and the arbitrary application of summary suspension procedures—a class of disabled persons, as defined by the ADA, were

discriminated against by the aforementioned Defendants by, due to their disability, denying fundamental rights including the right to bodily integrity, the right to deny health care, the right to choose health care, under the threat of the arbitrary application of pre-hearing deprivation procedures.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

129.   Such conduct amounted to class based discrimination of Plaintiffs and similarly situated health care professionals solely on the basis of disability, or perceived disability, simply because they enforced their fundamental rights.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

130.   Defendants, HPRP, Carolyn Batchelor, Stephen Batchelor, Nikki Jones and Doe, used intimidation and threats against "approved providers" in order to coerce them to recommend that licensees qualify for monitoring. Such

21430665.1

intimidation and threats were designed to obstruct justice and prevent licensees from a successful outcome in administrative proceedings.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

131.   In one such instance of furtherance of said conspiracy, and in violation of 42 USC § 1985(2) and (3), on July 1, 2014, Martha Harrell, LMSW, was contacted by Carolyn Batchelor, the Director of HPRP, one day after testifying that Kelly Ann Schultz, PA, did not meet the requirements for an HPRP contract and was told that if she continued to testify on behalf of licensees she could no longer be on the HPRP approved provider list. Ms. Harrell advised that she could no longer testify at a further proceeding and as a result, Ms. Schultz was injured by the threats and intimidation of Defendant, Carolyn Batchelor, and forced to accept unnecessary medical treatment at the hands of HPRP.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

132.   In each instance of HPRP case closure, LARA and Carole Engle arbitrarily applied summary suspension procedures and summarily suspended a licensee's license simply because of the decision to not voluntarily participate in HPRP and subject themselves to unnecessary treatment.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

133.   Defendants' arbitrary application of summary suspension procedures, coupled with the flagrant due process violations committed by HPRP and its employees, under the threat of certain license suspension amount to a conspiracy in violation of 42 USC § 1985, and are designed to arbitrarily increase HPRP participants through threats, intimidation, force, and coercion and systematically deprive Plaintiffs and similarly situated Class Members of due process and the equal protection of the laws and privileges and immunities of the laws.

**ANSWER:**

21430665.1

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

134.   During relevant times, Defendants acted in furtherance of the conspiracy by conspiring to coerce Plaintiffs and the Class into unnecessary treatment and by arbitrarily depriving health care professionals of due process, through the arbitrary application of suspension procedures and through the threat of summary suspension, in violation of the licensees' constitutional rights of due process.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

135.   As a direct and proximate result of the Defendants' conduct, the named Plaintiffs and similarly situated individuals were deprived of their constitutionally protected Equal Protection and Due Process Rights secured by the Fourteenth Amendment. Plaintiffs were forced to enter into arbitrary and capricious treatment programs set up and designed by HPRP, with HPRP approved

21430665.1

providers that were forced to follow HPRP universal guidelines, and not in the best interest of the licensee when making health care decisions. All of this was done at the direction of HPRP and BHCS, in known violation of law, and under the constant threat that the licensee either follow everything HPRP said or face certain suspension and/or revocation of their professional license.

**<u>ANSWER:</u>**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

136.  As a direct and proximate result of Defendants' willful, wanton, reckless, and callous conduct, the named Plaintiffs and similarly situated individuals suffered loss of life, liberty and property, and experienced mental anguish and financial harm.

**<u>ANSWER:</u>**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

137.  Wherefore, Plaintiffs request the following relief:

73

A.      Compensatory and punitive damages; and

B.      Any and all other damages otherwise recoverable under 42

USC § 1985, including attorney's fees.

**ANSWER:**

No response is required as to this Paragraph because all claims against

Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count

VI, have been dismissed by the Court.  *See* Docket No. 62.


**Count V**
**Neglect To Prevent Conspiracy Pursuant**
**To 42 USC § 1986 By All Defendants**

138.   Plaintiffs incorporate and adopt paragraphs one (1) through one

hundred thirty six (136) of this Complaint as if fully stated herein.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 1 through 137, above.

139.   At  relevant  times,  all  Defendants  had  knowledge  of  the

aforementioned wrongs conspired to be done by the aforementioned Defendants,

and failed to prevent the commission of the same, or neglected or refused to do so.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

140.   As a result of reasonable diligence executed by any of the Defendants, such as authorization of an investigation, harm to the Plaintiffs and similarly situated individuals could have been prevented.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

141.   The deprivations of constitutional rights, namely deprivation of the right to due process, bodily integrity, and the right to choose health care, without the due process of law prior to arbitrary license suspension, at the hands of the Defendants were so obvious that a reasonable person would have recognized that severe deprivations were occurring.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

142.  As a direct and proximate result of the aforementioned Defendants failure to act, the named Plaintiffs and similarly situated individuals have suffered injury, including but not limited to: suspension of their license, involuntary admission into a 2-3 year treatment program, loss of employment, loss of hospital privileges, unnecessary entries into the National Practitioner Databank, mental anguish, and professional embarrassment.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

143.  Wherefore, Plaintiffs request the following relief:

    A.    Compensatory and punitive damages; and

    B.    Any and all other damages otherwise recoverable under 42 USC § 1986, including attorney's fees;

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


## Count VI
## Breach Of Contract (3rd Party Beneficiary)
## Pursuant To MCL 600.1405 By All Defendants

144.   Plaintiffs incorporate and adopt paragraphs one (1) through one hundred forty two (142) of this Complaint as if fully stated herein.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 1 through 143, above.

145.   On September 1, 2012, HPRP entered into a contract with the State of Michigan as the corporation responsible for administering the HPRP contract. (**Exhibit A**).

**ANSWER:**

Ulliance admits that effective September 1, 2012, it entered into a contract with the State of Michigan to assist the State of Michigan with the administration of the HPRP, and Ulliance admits that a portion of the contract was attached as Exhibit A to the Second Amended Complaint.   Ulliance denies the remaining allegations of Paragraph 145.

146.   Members of the Class, under this cause of action, are HPRP participants between September 1, 2012, and the present.

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 146.  In further answer, Ulliance denies that Plaintiffs may bring this action on behalf of any class of persons under Fed. R. Civ. P. 23.

147.   The aforementioned contract is set to expire in August 2015. However, HPRP has the option to exercise two 1-year extensions.

**ANSWER:**

Ulliance admits that it entered into a contract with the State of Michigan, effective September 1, 2012, to assist with the administration of the HPRP, and Ulliance further admits that the contract was extended for one additional year and currently has an expiration date of August 31, 2016.

148.   Under the terms of said contract, HPRP is required to undertake certain tasks in the administration of HPRP on behalf of the State of Michigan as established by Public Act 80 of 1993 and directly for the benefit of HPRP participants.

**ANSWER:**

Ulliance admits that the contract between it and the State of Michigan requires it to assist with the administration of the HPRP pursuant to the provisions of the contract, the HPRP Policy and Procedure Manual, and the applicable Michigan statutes.  Ulliance denies the remaining allegations of Paragraph 148.

149.  The stated intent of the contract is to provide a "confidential, non-disciplinary, treatment-oriented approach to address these public health and safety issues while assisting licensees in their recovery." (**Exhibit A; p. 33**).

**ANSWER:**

Ulliance admits that Paragraph 1.012 of the Statement of Work between Ulliance and the State of Michigan states that "Public Act 80 of 1993 established the HPRP as a confidential, non-disciplinary, treatment-oriented approach to address these public health and safety issues while assisting licensees in their recovery" and that provision also states: "To be involved in the program, licensees must be willing to: (1) Acknowledge their condition; (2) Seek and complete appropriate treatment; (3) Refrain from working as determined necessary by the Contractor and applicable policies of the Committee; and (4) Abide by a written monitoring agreement."  Ulliance further admits that Section 1.012 states that: "The HPRP is NOT a treatment program.  The HPRP does not provide intervention, evaluation, treatment, or continuing care services.  The HPRP is a monitoring program that coordinates services between participants and approved

79

21430665.1

service providers. Program participants are responsible for paying all costs associated with the treatment services they receive." Ulliance denies the remaining allegations of Paragraph 149.

150. A number of other requirements under the contract specifically require HPRP to perform tasks directly for the benefit of HPRP participants making Plaintiffs' third party beneficiaries pursuant to MCL 600.1045:

A.    HPRP is required to individually tailor to each contract licensee's specific situation; (**Exhibit A; p. 33**)

B.    HPRP is required to maintain the confidentiality of those licensees whose involvement in the program is on a voluntary basis (**Exhibit A; p. 33**)

C.    HPRP is required to refrain from making treatment decisions regarding a licensee; (**Exhibit A; p. 33**)

D.    HPRP is required to provide HPRP participants with a full list of approved HPRP providers; (**Exhibit A; p. 39**)

E.    HPRP case managers can only have eighty (80) cases per manager;

F.    HPRP must follow the rules approved by the Health Care Professional Recovery Committee ("HPRC"). The HPRC policies and procedures contain exhaustive guidelines, most of

21430665.1

which are in place for the benefit of participants during their recovery; (**Exhibit A; p. 43**) and

G.   HPRP is expressly prevented from engaging in treatment of licensees. (**Exhibit A; p. 33**)

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 24 and 46, above and denies that it is required to perform tasks directly for the benefit of Plaintiffs or any other HPRP participants and denies that Plaintiffs or any other HPRP participants are third party beneficiaries of the contract between Ulliance and the State of Michigan.  In further answer, Ulliance states that Paragraph 1.012 of the Statement of Work between Ulliance and the State of Michigan states that:  "The goal of the Bureau of Health Professions, together with the [HPRP] Committee, is to operate the HPRP in a manner that … 2.)  Provides a program environment that monitors licensees seeking treatment and ensures that the monitoring agreement developed and agreed to between the Contractor and the licensee is tailored to their specific situation …. 5.)  Ensures the confidentiality of those licensees whose involvement with the program is on a voluntary basis.   6.)   Provides monitoring of those licensees whose involvement with the program is mandated by a board or disciplinary subcommittee as a condition of maintaining their license or registration."   In further answer, Section 1.12 states that:  "The HPRP is NOT a

21430665.1

treatment program.   The HPRP does not provide intervention, evaluation, treatment, or continuing care services.   The HPRP is a monitoring program that coordinates services between participants and approved service providers. Program participants are responsible for paying all costs associated with the treatment service they receive."   In further answer, Task Ten of the Statement of Work, entitled "HPRP Treatment Service Provider Network," states that: "Because the HPRP is not a treatment program, the program relies on an extensive statewide network of approved treatment service providers.   These providers must have the education, skills, and training to ensure that program participants are appropriately treated and monitored."   Ulliance further admits that the Health Professional Recovery Committee oversees the HPRP "and is composed of members representing the professions eligible for the program.   The Committee fulfills some of its oversight responsibilities for the HPRP through the development and adoption of the policies and procedures in" the HPRP Policy and Procedure Manual.   *See* HPRP Policy and Procedure Manual, Introduction.   Ulliance denies the remaining allegations of Paragraph 150.

151.   Additionally, the LARA specifically contends that HPRP participants are the direct beneficiaries of HPRP, under the heading "What are the Benefits of HPRP?" The LARA provides, "It is the philosophy of the HPRP that substance use and mental illness disorders are treatable conditions. By providing health care

82

professionals an opportunity to enter into treatment and to recover from their diseases early in the disease process, the HPRP can serve to minimize negative impacts on licensees/registrants."[2]

**ANSWER:**

Ulliance lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 151.

152.   Pursuant to the contract, Defendant HPRP, and its employees owe a duty to HPRP participants as intended beneficiaries to provide them with a voluntary and confidential method of seeking treatment for substance use and mental health related issues.

**ANSWER:**

Ulliance denies the allegations of Paragraph 152.

153.   Further, employees of HPRP and Ulliance, as licensed health care professionals in the State of Michigan, owe HPRP participants a preexisting duty to provide only the specifically tailored treatment that is needed to treat a qualifying diagnosis and treat participants in an ethical and confidential manner.

---

[2] https://www.michigan.gov/lara/0,4601,7-154-35299_63294_27648-43127--,00.html

**ANSWER:**

Ulliance denies the allegations of Paragraph 153.

154. Moreover, LARA, HPRP, and its employees, pursuant to MCL 333.16165, 333.16167, 333.16168, 333.16169 and 333.16167, owed a preexisting duty to provide health care professionals in the State of Michigan with a confidential and voluntary avenue of recovery for substance abuse related issues.

**ANSWER:**

Ulliance denies the allegations of Paragraph 154.

155. It is expressly stated in the contract that "HPRP is not a treatment program [and] that HPRP does not provide intervention, evaluation, treatment, or continuing care services. HPRP is a monitoring program that coordinates services between participants and approved service providers." (**Exhibit A; p. 33**)

**ANSWER:**

Ulliance admits that Section 1.012 of the Statement of Work between Ulliance and the State of Michigan states: "The HPRP is NOT a treatment program.  The HPRP does not provide intervention, evaluation, treatment, or continuing care services.  The HPRP is a monitoring program that coordinates services between participants and approved service providers.  Program

participants are responsible for paying all costs associated with the treatment services they receive."  Ulliance denies the remaining allegations of Paragraph 155.

156.  Pursuant to the aforementioned contract, HPRP and its evaluators are required to individually tailor to each contract licensee's specific situation based off of clinical treatment decisions. (**Exhibit A: p. 33**)

**ANSWER:**

Ulliance admits that, pursuant to the contract between Ulliance and the State of Michigan, the applicable Michigan statutes, and the HPRP Policy and Procedure Manual, it recommends an appropriate monitoring agreement that is tailored to the specific circumstances of each licensee involved in the HPRP.  Ulliance denies the remaining allegations of Paragraph 156.

157.  Pursuant to the aforementioned contract, HPRP is required to refrain from making treatment decisions regarding the individual treatment of a licensee. (**Exhibit A; p. 33**)

**ANSWER:**

Ulliance admits that, pursuant to and in compliance with its contract with the State of Michigan, the applicable Michigan statutes, and the HPRP Policy and Procedure Manual, it recommends an appropriate monitoring agreement to each

eligible licensee and does not provide any treatment.   Ulliance denies the remaining allegations of Paragraph 157.

158.   Pursuant to the aforementioned contract, HPRP is required to maintain the confidentiality of those licensees whose involvement in the program is on a voluntary basis. (**Exhibit A; p. 33**)

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 24 and 46, above and admits that it complies with its contract with the State of Michigan, the applicable Michigan statutes, and the HPRP Policy and Procedure Manual with regard to the confidentiality of the licensees that are referred to the HPRP.   Ulliance denies the remaining allegations of Paragraph 158.

159.   Pursuant to the aforementioned contract, HPRP is required to provide HPRP participants with a full list of approved HPRP providers. (**Exhibit A; p. 39**)

**ANSWER:**

Ulliance admits that, pursuant to the Statement of Work, "Task Ten: HPRP Treatment Service Provider Network," it has an extensive statewide network of approved treatment service providers and it complies with its contract with the State of Michigan, the applicable Michigan statutes, and the HPRP Policy and Procedure Manual with regard to referrals to approved providers for evaluations and for treatment during monitoring.   In further answer, Ulliance states that Task

86

Ten of the initial contract between Ulliance and the State of Michigan regarding referrals for treatment and monitoring also stated that: "A partial list can be provided of providers in the geographic region but the full list must be made available to a participant upon request;" and that Change Notice No. 2 to the contract states: "Participants must be provided access to a list of approved providers." In further answer, Ulliance states that Section 204.00 of the HPRP Policy and Procedure Manual states: "Provide a list of appropriate HPRP-approved providers to the health care professional in order to obtain the evaluation." Ulliance denies the remaining allegations of Paragraph 159.

160. Pursuant to the aforementioned contract, HPRP case managers can only have eighty (80) cases per manager.

**ANSWER:**

Ulliance admits that Paragraph 1.030 of the Statement of Work states that: "Regulatory participants must be assigned to a minimum of two case managers whose case load shall not exceed 80 per case manager." Ulliance denies the remaining allegations of Paragraph 160.

161. Pursuant to the aforementioned contract, HPRP must follow the rules approved by the HPRC. (**Exhibit A; p. 43**)

**ANSWER:**

Ulliance admits that it complies with the provisions of its contract with the State of Michigan, the applicable Michigan statutes, and the HPRP Policy and Procedure Manual, which was developed and adopted by the Health Professional Recovery Committee.  Ulliance denies the remaining allegations of Paragraph 161.

162.   At various times, between September 1, 2012 and the present, HPRP, Carolyn Batchelor, Stephen Batchelor, Susan Bushong, and Doe, have consistently exceeded their authority under the aforementioned contract and made treatment decisions regarding the care of licensees.

**ANSWER:**

Ulliance denies the allegations of Paragraph 162.

163.   At various times, between September 1, 2012 and the present, the aforementioned Defendants disclosed confidential participant files and health records to LARA and BHCS after HPRP case closure.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 24 and 46, above and admits that it has followed the requirements of its contract with the State of Michigan, the applicable Michigan statutes, and the HPRP Policy and Procedure Manual as to the confidentiality of participants' files. Ulliance denies the remaining allegations of Paragraph 163.

164.   At various times, between September 1, 2012 and the present, the aforementioned Defendants failed to tailor each contract to meet the needs of each licensee.

**ANSWER:**

Ulliance denies the allegations of Paragraph 164.

165.   At various times, between September 1, 2012 and the present, the aforementioned Defendants failed to provide participants with a full list of HPRP approved providers and has instead only provided a list of one to three providers specifically selected because of their history in determining that participants require a contract.

**ANSWER:**

Ulliance denies the allegations of Paragraph 165.

21430665.1

166.   On information and belief, at various times, between September 1, 2012 and the present, case managers had loads grossly exceeding the amount required by the contract.

**ANSWER:**

Ulliance denies the allegations of Paragraph 166.

167.   At various times, between September 1, 2012 and the present, the aforementioned Defendants failed to follow the rules promulgated by the HPRC.

**ANSWER:**

Ulliance denies the allegations of Paragraph 167.

168.   As a direct and proximate cause of the aforementioned–Defendants breach of the September 1, 2012 contract with the State of Michigan–Plaintiffs and similarly situated members of the Class incurred injuries such as economic damages resulting from unnecessary treatment, professional embarrassment, lost wages, etc.

**ANSWER:**

Ulliance denies the allegations of Paragraph 168.

169.   Wherefore, Plaintiffs request the following relief:

21430665.1

  A.  Compensatory and punitive damages;

  B.  Consequential damages;

  C.  Any and all other damages otherwise recoverable for a breach of contract; and

  D.  Attorney fees.

**ANSWER:**

Ulliance denies that Plaintiffs have any valid claim against it or anyone else and Ulliance denies that Plaintiffs are entitled to any relief including the relief set forth in Paragraph 169 of the Second Amended Complaint.

**Count VII**
**Civil Conspiracy Pursuant To**
**42 USC § 1983 By All Defendants**

170. Plaintiffs incorporate and adopt paragraphs one (1) through one hundred sixty-eight (168) of this Complaint as if fully stated herein.

**ANSWER:**

Ulliance incorporates its answers to Paragraphs 1 through 169, above.

171. At relevant times, Defendants HPRP, Stephen Batchelor, Carolyn Batchelor, Nikki Jones, Susan Bushong, Carole Engle, LARA and Doe, engaged in a conspiracy to deprive Plaintiffs of their Due Process Rights and Equal Protection of the Laws of the State of Michigan and the United States and their rights afforded under the Constitution of the United States particularly the right to due process, the

91

right to bodily integrity by subjecting them to unnecessary treatment under the threat of arbitrary license suspension.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

172.   All Defendants, including Nikki Jones, Carolyn Batchelor, Stephen Batchelor, and Susan Bushong, shared in the general conspiratorial objective by creating unconstitutional policies outlined above, selecting evaluators and coercing evaluators to mandate unnecessary treatment, engaging in the corporate practice of medicine by recommending treatment not previously recommended by HPRP providers, arbitrarily closing cases as "non-compliant" for refusal of unnecessary treatment.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

173.   Further, Defendants including, LARA, Susan Bushong, and Carole Engle, furthered the conspiracy through the arbitrary application of summary suspensions procedures after HPRP "non-compliance" solely on the basis of "non-compliance" and through the use of confidential treatment records in summary suspension procedures.

**<u>ANSWER:</u>**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


174.   Acts in furtherance of the conspiracy include the acts detailed above, including but not limited to:

        a.    threats aimed at treatment providers for testifying in favor of a licensee in after summary suspension procedures as outlined above;

        b.    use of "confidential" treatment records in summary suspension procedures;

        c.    the near unanimous application of summary suspension procedures in the event of HPRP non-compliance;

> d.   HPRP policies requiring that HPRP make final treatment decisions;
>
> e.   HPRP's refusal to adhere to the treatment decisions of qualified providers;
>
> f.   the refusal to conduct an investigation prior to the application of summary suspension procedures; and
>
> g.   the selection of a cadre of providers who are supportive of HPRP's cause and diagnose substance use disorders despite no visible criteria requiring a diagnosis.

**<u>ANSWER</u>:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

175.   In each of the named Plaintiffs' cases, the objective was accomplished through the illegal acts of all Defendants, unnecessary treatment was required and summary suspension procedures were used to force compliance and entry into the program.

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

176.  As a direct and proximate cause of the aforementioned conduct, Plaintiffs and similarly situated members of the Class incurred injuries such as economic damages resulting from unnecessary treatment, professional embarrassment, lost wages, etc.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

177.  Wherefore, Plaintiffs request the following relief:

A.    Compensatory and punitive damages;

B.    Consequential damages;

C.    Any and all other damages otherwise recoverable for a breach of contract; and

D.    Attorney fees.

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.


**Count VIII**
**Violations Of The Americans With Disabilities Act ("ADA")**
**42 USC § 12101 *et seq* And Rehabilitation Act Of 1973**

178.   On July 26, 1990, the Americans with Disabilities Act of 1990, 42 USC § 12101, *et seq,* the most comprehensive civil rights advancement for persons with disabilities ever to be enacted by the United States Congress, was signed into law. The Preamble of the ADA states its purpose. "An Act: To establish a clear and comprehensive prohibition of discrimination on the basis of disability." 42 USC § 12101, *et seq*.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.


179.   Title II of the ADA 42 USC § 12202 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

180. 42 USC § 12102 extends to individuals who are in recovery for the use of illegal drugs or alcohol or are erroneously regarded as having an addiction to illegal drugs or alcohol pursuant to 42 USC § 12114(b).

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

181. At all times relevant, the Defendants were acting under the color of law, namely MCL 333.16168, MCL 333.16233 and 333.16167.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

182. Admission into the HPRP program requires that a licensed health care professional have an impairment which requires treatment. MCL 333.1670.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

183. By implication, anyone Defendants contend is in need of an HPRP evaluation and monitoring is an individual with an impairment or an individual erroneously regarded as such pursuant to the ADA 42 USC § 12101.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

184.   Plaintiffs and the class are all "qualified individual(s) with disabilities" as defined by the ADA or are erroneously regarded as suffering from a disability by Plaintiffs.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

185.   Title II of the ADA prohibits government entities from discriminating against disabled persons by reason of their disability. This prohibition applies to all acts of a public entity, even if carried out by a private contractor such as HPRP. 28 CFR § 35.102

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

186.   § 504 of the Rehabilitation Act of 1973 also prohibits a government entity from discriminating against a disabled individual by reason of his or her

21430665.1

disability with the added requirement that the program that the individual is excluded from must receive Federal financial assistance.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

187.  Discrimination under § 504 is essentially the same as discrimination under Title II of the ADA, and also incorporates the remedies, rights, and procedures set forth in Title VI of the Civil Rights Act of 1964 for violations of § 504.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

188.  Here, the State of Michigan has received Federal Assistance for substance abuse programs in the State of Michigan through the Substance Abuse and Mental Health Services Administration. In exchange for this funding, the State

of Michigan agreed to adhere to § 504 and Title II of the ADA in the operation of state substance abuse programs.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

189.   Here, by broad application of the aforementioned policy requiring pre-hearing deprivation procedures, the named Plaintiffs and the sub-class were discriminated against by all Defendants, and particularly Defendants LARA and Carole Engle, solely on the basis of their perceived disability without regard to whether or not they posed an imminent threat to the public health, safety and welfare.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

190.   Each of the named Plaintiffs had their license suspended, not because an investigation determined that there were factors indicating that they were a

21430665.1

threat to the public health, safety or welfare, but solely because they either had a disability or were erroneously regarded as having a disability and refused to accept unnecessary treatment at the hands of HPRP.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

191.   Once Plaintiffs were erroneously regarded as having a disability and refused treatment for this perceived disability in the manner that HPRP arbitrarily prescribed, their license was automatically suspended. Such arbitrary action had the effect of a blanket policy of discrimination in violation of Title II of the ADA and § 504 of the Rehabilitation Act.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

192.   Moreover, all Defendants, including HPRP, Carolyn Batchelor, Stephen Batchelor, Nikki Jones, and Susan Bushong, discriminated against

members of the Class with a disability by subjecting them to unnecessary treatment mandates determined by HPRP during "team" meetings and not licensed providers as more fully detailed above.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

193. Further, all Defendants enacted or ratified the broad policies more fully detailed above which had the effect of discriminating against licensees referred to HPRP regardless of whether or not they suffered from an actual disability, including but not limited to unnecessary medical treatment, disclosure of private health and substance abuse treatment records in violation of 42 USC § 290dd-2, and forced medical treatment.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

21430665.1

194.    Plaintiffs and class members who refused treatment received summary suspension which, for a licensed health care professional, has permanent and lasting consequences regardless of whether a summary suspension is overturned by an ALJ. Plaintiffs and class members were arbitrarily denied access to courts prior to pre-hearing deprivation solely on the bases of a perceived disability.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.


195.    Licensees who refuse HPRP monitoring are treated differently than other licensees in that LARA will perform an investigation prior to suspending a licensees' license in other cases. When a licensee refuses HPRP monitoring, regardless of the severity of their perceived disability, licensees always receive license suspension without an investigation into the severity of the perceived disability. This refusal to investigate prior to license suspension and failure to articulate the reasons for pre-hearing deprivation on the face of the order further denies licensees the benefit of procedural due process prior to the initiation of summary suspension procedures solely on the basis of perceived disability.

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

196.   The conduct of Defendants, as alleged above, constitutes a violation of the Fourteenth and Fifth Amendments, infringement on the fundamental right to bodily integrity and adequate health care, denial of access to courts prior to license suspension, and discrimination on the basis of disability.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court.  *See* Docket No. 62.

197.   As a direct and proximate result of Defendants conduct, Plaintiffs suffered injuries such as economic damages resulting from unnecessary treatment, professional embarrassment, lost wages, etc.

21430665.1

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

198. Moreover, the arbitrary application of pre-hearing deprivation by Defendants, after Plaintiffs and the sub-class refused unnecessary treatment, was retaliation for Plaintiffs' opposition to Defendants' discriminatory acts.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

199. Wherefore, Plaintiffs request the following relief:

      a.    Compensatory and punitive damages; and

      b.    Any and all other damages otherwise recoverable under 42 USC § 1983, and 42 USC § 12101, *et seq*, including attorney's fees.

**ANSWER:**

No response is required as to this Paragraph because all claims against Ulliance, Carolyn Batchelor, Stephen Batchelor, and Nikki Jones, except in Count VI, have been dismissed by the Court. *See* Docket No. 62.

**WHEREFORE**, Defendant Ulliance, Inc. respectfully requests that all of the claims asserted against it in this case be dismissed, with prejudice, and that Ulliance be awarded all costs, expenses, and attorney's fees incurred in defending against the claims asserted by Plaintiffs against it.

## II.  AFFIRMATIVE DEFENSES

Ulliance, Inc. may rely on one or more of the following Affirmative Defenses in this case:

A.      This Court lacks subject matter jurisdiction over the claims asserted by Plaintiffs against Ulliance.

B.      Plaintiffs lack standing to bring the claims against Ulliance.

C.      Plaintiffs' claims against Ulliance are barred by the Eleventh Amendment, governmental immunity, qualified immunity, and/or Michigan statutory immunity.

21430665.1

D.     Plaintiffs' claims against Ulliance are barred because Plaintiffs are not third party beneficiaries of the contract between Ulliance and the State of Michigan.

E.     Plaintiffs' claims against Ulliance are barred because none of the Plaintiffs had a contract with Ulliance.

F.     Plaintiffs' claims against Ulliance are barred because Ulliance did not breach its contract with the State of Michigan.

G.     Plaintiffs' claims against Ulliance are barred because Ulliance has complied and/or substantially complied with its obligations to the State of Michigan under its contract.

H.     Plaintiffs' claims against Ulliance are barred because Plaintiffs cannot demonstrate that any breach of contract by Ulliance caused Plaintiffs to incur any damages.

I.     Plaintiffs' claims against Ulliance are barred because Plaintiffs cannot demonstrate that they suffered any damages as a result of any breach of contract by Ulliance.

J.     Plaintiffs' claims against Ulliance are barred because any alleged damage Plaintiffs incurred were caused by the actions of others—including Plaintiffs themselves.

21430665.1

K.     Plaintiffs' claims against Ulliance are barred because Ulliance is entitled to immunity as to any claims asserted by Plaintiffs, pursuant to MCL §333.16244(1) and otherwise, because Ulliance, acting in good faith, assisted the State of Michigan in carrying out its duties and thus is immune from civil or criminal liability, including but not limited to, liability in a civil action for damages.

L.     Plaintiffs' claims against Ulliance are barred because they voluntarily agreed to participate in the HPRP.

M.     Plaintiffs' claims against Ulliance are barred by res judicata/claim preclusion or collateral estoppel/issue preclusion, including because of the administrative proceedings in which they were involved with the State of Michigan.

N.     Plaintiffs' claims against Ulliance are barred by the doctrines of unclean hands and due to their own improper conduct.

O.     Plaintiffs' claims against Ulliance are barred by release and/or waiver due to their voluntary participation in the HPRP including signing a Monitoring Agreement which precludes the claims asserted in this case.

P.     Ulliance reserves the right to claim that some or all of the Plaintiffs failed to mitigate the damages they claim they incurred.

21430665.1

Q.    Ulliance reserves the right to raise such additional affirmative defenses as may be appropriate, including after investigation and discovery occurs.

**WHEREFORE**, Defendant Ulliance, Inc. respectfully requests that all of the claims asserted against it in this case be dismissed, with prejudice, and that Ulliance be awarded all costs, expenses, and attorney's fees incurred in defending against the claims asserted by Plaintiffs against it.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Defendants Ulliance, Inc.

By:  /s/ Robert M. Jackson
     Robert M. Jackson (P40723)
     Mitra Jafary-Hariri (P74460)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7430
rjackson@honigman.com
mjafary-hariri@honigman.com

Dated: April 14, 2016

110

21430665.1

## PROOF OF SERVICE

I hereby certify that on April 14, 2016, I electronically filed under seal Ulliance, Inc.'s Answer and Affirmative Defenses to Plaintiffs' Second Amended Class Action Complaint with the Clerk of the Court using the ECF system.  I also certified that I served a copy of same on the following by regular first class mail:

CHAPMAN LAW GROUP
Ronald W. Chapman
Ronald W. Chapman, II
Attorneys for Plaintiffs
1441 West Long Lake Road, Suite 310
Troy, Michigan  48098

-and-

MI DEPT. OF ATTORNEY GENERAL
PUBLIC EMPLOYMENT, ELECTIONS & TORT DIVISION
John G. Fedynsky
Thomas P. Clement
Erik A. Grill
Attorneys for State Defendants
525 W. Ottawa Street
P.O. Box 30736
Lansing, MI 48909

/s/ Robert M. Jackson
*Attorneys for Defendants Ulliance, Inc.*

21430665.1